FRUGÉ, Judge.
This is an appeal from a judgment awarding plaintiff, Sidney S. Joffrion, Jr., workmen’s compensation benefits at the rate of $49.00 per week for the period of his disability, not to exceed 500 weeks, with legal interest on past due installments for medical expense benefits allowed by law and for costs. Defendant-appellant, Sears, Roebuck and Company, contends that the trial court erred: (1) in finding that the plaintiif-appellee suffered a com-pensable injury in the course and scope of his employment with the defendant-appellant, (2) in finding a connexity between the plaintiff’s present disability and any accidental injury he may have suffered while working in the course and scope of his employment for defendant-appellant, and (3) in failing to sustain the defendant-appellant’s plea of prescription. The only medical testimony presented at the trial was that of plaintiff’s treating physician and the orthopedic specialists to whom he was referred by his treating physician. After reviewing their testimony and the testimony of five of plaintiff’s disinterested co-workers, we can find no manifest error in the trial judge’s finding of fact. We agree with this legal conclusion on the issue of prescription. Accordingly, we affirm.
Mr. Joffrion is 32 years old. He was originally employed by Sears in 1963, immediately after he left college. By January of 1968, he had risen to the position of manager of the Sears store in Natchitoch-es, Louisiana, where he remained until he voluntarily terminated his employment on November 16, 1970. His salary while working for Sears was $700.00-$800.00 per month. Mr. Joffrion’s wife and five of his former subordinates at Sears testified in his behalf. Mr. Joffrion also testified. Medical testimony was elicited (either at the trial or through depositions offered at the trial) from Mr. Joffrion’s personal physician and two orthopedic specialists. Since the testimony of the law witnesses is mutually consistent, we will state the facts in a narrative form instead of summarizing each witness’s testimony separately.
The record shows that prior to January, 1970, plaintiff lived a healthy, vigorous life. He was very active around his home, engaging in lifting, building, and furniture-moving activities. He enjoyed hunting and fishing and often fished from dawn until dark. In addition to his managerial duties at the store, he actively assisted his subordinates in the execution of their jobs. He often helped the porter and service personnel stack heavy appliances in the warehouse to provide more storage space and move heavy appliances around the display area or back to the warehouse. He also helped service personnel repair electrical and gasoline-driven appliances, as well as helping them make deliveries of appliances which were too heavy for them to deliver alone. He helped install appliances and helped customers carry heavy items to their cars.
In January of 1970, Mr. Joffrion was helping the porter carry a go-cart from the sales area back to the warehouse when he slipped and fell. He attempted to retain control of the go-cart in order to keep it from falling. In so doing, he injured his back. Plaintiff testified that “something just popped and it started hurting in my back.” The porter testified that the plaintiff fell and grabbed his back. Another employee testified that about the time of the go-cart incident the plaintiff remarked to him that he had hurt his back. Mr. Jof-frion went to his personal physician, Dr. Campbell, who prescribed an analgesic and a muscle relaxer. Although plaintiff knew that an accident report had to be filed, he was not familiar with the exact time period within which it had to be filed. He did *727 not file an accident report until February 19, 1970. The assistant manager testified that there was normally some delay in filing accident reports from the Sears store, although one month was a little longer than usual. Mr. Joffrion had residual pain for a week to ten days during which he needed medication. The plaintiff’s back remained stiff at times, but he never missed work. However, he altered his work habits and attempted to do as little moving, lifting, or straining as possible. Occasionally he would attempt to deliver merchandise to a customer’s home or car. On these occasions his back would begin hurting in the same place that it did before and he would have to take medication.
The testimony of Mrs. Joffrion and Jof-frion’s co-employees show a vigorous, active life before the January, 1970, accident. Mrs. Joffrion testified that after the 1970 accident he stopped helping around the house and fished for shorter periods because he had trouble sitting in a boat. His pain recurred and he complained more frequently as time progressed.
Joffrion’s co-employees found a marked change in his activities after January, 1970. Five co-employees testified in plaintiff’s behalf. We find the testimony of the three male employees very significant. Prior to January, 1970, he actively assisted them in the strenuous physical aspects of their jobs as described above. These men, who were around him most often when he engaged in strenuous, physical activity, testified that he had never complained about his back prior to January, 1970. After the January incident, he refused to help with jobs that required lifting or straining because his back hurt. He occasionally complained that he had hurt his back again or merely that his back was hurting him. On occasion, Joffrion would attempt to help with light lifting, but he would be very careful in doing it.
Sometime in the summer of 1970, Jof-frion on two occasions hurt his back in the same place while trying to move appliances to the customer’s car. After the second occasion he called his doctor for medication, but he did not make an appointment. Dr. Cook, who is Dr. Campbell’s associate, testified that in the summer of 1970 Jof-frion called him from work, stated that he was dizzy and having back pains, and asked for a prescription. Dr. Cook remembered this phone call because Joffrion reacted violently to Cook’s suggestion that he might want to take X-rays and have a report prepared for insurance purposes. Mrs. Hennigan, an employee at the Sears store, was near Joffrion’s office and overheard Joffrion’s side of the conversation. She corroborated both Joffrion’s and Cook’s testimony that Joffrion had hurt his back and called Cook about the problem.
Joffrion did not file an accident report on the last two accidents. After each of these occurrences, his back bothered him for approximately a week or ten days. After the latter incident, he attempted to refrain from lifting or pushing even more than before. However, at times, when there was no other male employee nearby, he still helped customers or sales clerks.
Joffrion resigned on November 16, at which time he mentioned to C. D. Steuben, District Manager, that he was having problems with his back. He asked Steuben if personnel would take care of him. He mentioned the accident report on the January incident, but did not mention his later accident.
After leaving Sears, he began selling insurance with Farm Bureau. The job entailed almost no physical activity, but it did require driving approximately 500 to 600 miles a week and talking to five or six customers a day. His back pains continued to recur from time to time, depending upon the amount of physical activity he was engaged in.
In April of 1971, Joffrion bent over to tie his shoe and was immediately seized by a severe pain in the same location in his back. Dr. Campbell referred plaintiff to Dr. Overdike, an orthopedic specialist, *728 who, after conservative treatment had failed, recommended surgery. Joffrion, however, was not receptive to the idea. In September, 1971, plaintiff bent over to inspect a rabbit cage when his disc ruptured. On this occasion, he was taken by ambulance from Natchitoches to Alexandria where Dr. Banks, another orthopedic specialist, performed surgery. At the time that depositions were taken, Joffrion’s residual disability was 35% of the body as a whole with a possibility of maximum cure of 15% disability of the body as a whole.
In 1966, plaintiff had had a minor incident of back sprain that did not last long. Since that time, he has experienced no other lifting, slipping or straining injuries to his back other than the incidents heretofore related.
The medical testimony is entirely consistent with the lay testimony. Dr. Ira L. Campbell, Jr. has been plaintiff’s personal physician for 11 years. He testified that there was no history of low back problems prior to January of 1970. Upon seeing Joffrion after the January, 1970, accident, he diagnosed Joffrion’s problem as a sacroiliac sprain and prescribed an analgesic and a muscle relaxer. Between January and August of 1970, Joffrion visited Dr. Campbell on three occasions for other problems and mentioned that his back was hurting, but there was no need for additional medication at those times. After the January accident, Joffrion was not disabled. Campbell thought, however, that the January event was the injury which caused Joffrion’s back problems and that an injury four years prior to 1970 with no recurring problems between 1966 and 1970, would not be the cause of Joffrion’s back problem. Dr. Campbell stated that Jof-frion could not return to his job as manager as the job was described with him. In fact, Dr. Campbell said, Joffrion had no business picking up anything heavier than a dinner plate.
Dr. Ovcrdike, an orthopedic specialist, testified that if the accident happened as described above and the only traumas to plaintiff’s back were those described above, that those traumas were the probable producing cause of the condition of Mr. Jof-frion’s back. The plaintiff has proven that the assumptions underlying Dr. Overdike’s conclusion are valid.
Dr. Banks, the orthopedic specialist who performed the operation on plaintiff’s back, entered the case at a late stage and therefore deferred to the other doctors as to causation. Defendant suggested that the cause of petitioner’s back problem is the fact that he was required to ride 500 to 600 miles a week in a car in the course of selling insurance. Dr. Banks spoke on this issue:
“Well of course riding in a car will aggravate any low back pathology and occasionally it will gradually cause the degeneration of the disc over a period of time. Now this man was only 31 years of age and it would be difficult — well, I’ll put it this way. You don’t ordinarily see just riding in a car produce this kind of a thing in a man 31 years of age. In a man a little bit older you might, but the disc ordinarily don’t do much degeneration until about the third decade as far as the normal life of the disc itself.”
Dr. Banks testified that the plaintiff could neither perform the physical functions necessary in managing a small retail outlet, nor return to that type of work in the future.
The trial judge was correct in finding that Mr. Joffrion sustained a compen-sable injury during the course and scope of his employment and finding a connexity between his present disability and the injury. Mr. Joffrion has proven the injury and its connexity with his disability to a legal certainty. He has carried the burden required by our jurisprudence which was summarized in Cripps v. Urania, 213 So.2d 353 (La.App.3rd Cir., 1965), as follows:
“Our jurisprudence is established that if, before the accident, the claimant is *729 able to work and has been working regularly but, commencing with the accident, the symptoms of the disabling condition appear and continue to manifest themselves, a presumption arises that the disability is causally connected with the accident, provided the medical evidence shows there is a reasonable possibility of such causal connection. See Gates v. Ashy Construction Company, La.App., 171 So.2d 742 (3rd Cir. 1965) and the cases cited therein.”
The defendant-appellant also contends that Mr. Joffrion’s action has prescribed or perempted. Mr. Joffrion’s first accident occurred in January of 1970. The trial court in its reasons for judgment found that “(t)his injury was not at the moment disabling but did produce pain. The injury was aggravated in August, 1970, cmd its disabling effect did not come into existence until April 1971 and completed its effects in September 1971.” The medical and lay testimony fully support this finding of fact. Mr. Joffrion’s suit was filed August 24, 1971, which is less than two years from the January, 1970, accident and less than one year from the time that the injury developed. “Where accident or injury and disability are not simultaneous, it is the onset of disability which is the compensable event and which commences the running of the relevant prescriptive period, subject, of course, to the limitation imposed by LSA-R.S. 23:1209[.]” The applicable portion of R.S. 23:1209 states:
“Also, where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.”
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed to defendant-appellant.
Affirmed.