303 So.2d 217 (1974)
Farrell L. BOURGEOIS, Sr.
v.
BROWN & ROOT, INC. and Highlands Insurance Company.
No. 6497.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 1974.
*218 Christovich & Kearney, R. K. Christovich, New Orleans, for defendants-appellants.
Ernest E. Barrow, II, Harvey, for plaintiff-appellee.
Before LEMMON, GULOTTA and SCHOTT, JJ.
SCHOTT, Judge.
This is a Workmen's Compensation proceeding in which the trial judge awarded to the plaintiff benefits for total and permanent disability, together with statutory penalties and attorney's fees.
Defendants' appeal is primarily on the basis that plaintiff's claim had prescribed under the provisions of LSA-R.S. 23:1209, and alternatively that the imposition of statutory penalties and attorney's fees was not warranted.
In his original petition, filed on January 8, 1973, plaintiff alleged that he sustained a job related injury on June 2, 1971, and that he was totally and permanently disabled since that time. After defendant filed an exception of prescription plaintiff amended his petition to allege that after the initial injury was sustained on June 2, 1971, he returned to work with defendant after the pain subsided; that on January 9, 1972, while still employed by defendant his injury manifested itself in the form of intensive pain in the back; that he has been disabled since that time; and that his employment by defendant was terminated when he informed his foreman of the pain and asked to be allowed to go home.
Plaintiff's deposition was taken by defendants thereafter and on the basis of the deposition defendants filed a motion for summary judgment contending that it was shown in plaintiff's testimony that he had actually sustained a separate accident in January, 1972, which caused his disability and since he had sued on the basis of an accident which occurred in June, 1971, his case was subject to dismissal.
Among errors assigned by defendants is one to the effect that the trial court erred in dismissing the motion for summary judgment filed by them. Under LSA-C.C.P. Art. 968, an appeal does not lie from the court's denial of a motion for summary judgment so that we do not consider that aspect of defendants' case.
Trial consisted of the testimony of the plaintiff, a co-worker and Dr. Kenneth Vogel. Plaintiff testified that he was first injured while on the job with defendant in June, 1971, when he was struck with a joint of pipe and knocked into some gratings. He experienced immediate pain, was unable to get up on his own and was taken to a first-aid station. There, he was treated primarily for injuries to his foot and was given medication and crutches with instructions to return the following day. When he returned to the first aid station he was again given treatment for his foot, but at that time he began to notice pain in his back and at his request was given an appointment with a Dr. Lucca at South Jefferson Hospital. He was given successive treatment for his leg and foot, but as to his back he testified that "even though it was dull, it was there. I knew I had pain." He was told that this was a bad bruise and that it would take a good while for the pain to go away. He eventually returned to work on a light duty basis and the dull pain in his back persisted although it was not severe. However, according to plaintiff's testimony he "had an occasion to do something strenuous in August of 1971 and then the pain got severe. It was from the right leg to the lower portion of the back down. It was more or less like numb *219 or paralyzed." The pain radiated from the lower part of his back down to his right leg causing him to walk stiff-legged the remainder of that day. He consulted his family physician on the following day, was examined, X-rayed and then given a shot. Plaintiff's testimony was as follows with respect to later developments:
"I did return to work and knowing that I now had a problem, I tried to keep myself from getting into strenuous situations and I knew that the job was coming to an end and I was in hopes of achieving a job with the company in a different capacity other than in construction. I was hoping to get into the maintenance department. In October of 1971, I got into a strenuous situation and I again got into severe pain but at this time, it was more in the lower part of the back. It was more there then any other place. I went and spoke to my superintendent, my immediate supervisor and we discussed it and I had a vacation coming. I asked if I could start that vacation and try to do something about this. It was the last day of the week, I think, and I couldn't turn in my vacation voucher at that time to begin it on a Monday morning. So, he suggested that I take one week off without pay and for me to sign my vacation papers and then the second week, I would be on vacation which would give me the two weeks. I signed the papers and I took the two weeks off and upon returning to work, the papers were never handed in. I actually had two weeks off without pay and I still had a vacation coming. This was in October."
In answer as to whether the pain resolved during that period, plaintiff said that "It resolved from severe pain to dull or it was an aggravating pain but I was able, I thought, to perform and I returned to work in November of 1971." At this point he left the construction department of defendant and was rehired by the maintenance department, initially for a 40-hour week schedule. He was soon working 12 hours a day, however, "and it wasn't very long that the long hours and the seven day schedule that I got into severe pain in my back and leg again."
In January, 1972, while operating a "cherry picker" it became necessary for him to disengage a weight hanging on the cable of the machine and upon completion of that task he began hurting "very severely" in his lower back and leg. According to his testimony, this occurred on January 6 or 7, and by January 9 the pain had become so severe that upon reporting for work he asked for permission from his foreman to return home, which was refused. He continued to work with the pain becoming more severe, and upon bringing this again to the attention of the foreman without any results he left the job.
A co-worker's testimony essentially corroborated plaintiff with respect to the incident of January, 1972, and he also testified that he had begun working with plaintiff in October, 1971; that plaintiff was having trouble with his back at that time; and that he and other co-workers had on occasion cooperated to do some of the work which plaintiff ordinarily would have done in order to relieve him.
Dr. Vogel offered the only medical testimony that he first saw plaintiff on September 28, 1972, and diagnosed a chronic cervical strain as well as a subcapsular herniated lumbar disc. He also saw the plaintiff on November 9 and December 21, 1972, as well as February 28, 1974. He opined that plaintiff's condition prevented him from engaging in the heavy lifting, pushing and pulling necessary to perform his former duties as a boilermaker and heavy equipment operator.
After a review of the evidence we readily conclude that there was no error in the trial judge's finding of total and permanent disability, but the real issue in this case is whether plaintiff's claim prescribed under the provisions of LSA-R.S. 23:1209, which provides that such claims *220 are barred unless within one year after the accident proceedings are initiated with the proviso that "where the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until the expiration of one year from the time the injury develops. ..."
Defendants' position is that plaintiff's disability manifested itself at least as early as October, 1971, on the occasion about which plaintiff testified in the extract set forth above. Plaintiff's position is that his injury developed when the pain became so severe on January 9, 1972, that he was forced to leave the job thereby making the filing of his suit on January 8, 1973, timely. We have concluded that plaintiff's position is supported by the jurisprudence. Joffrion v. Sears, Roebuck and Company, 272 So.2d 725 (La.App. 3rd Cir. 1973); Kaupp v. City of New Orleans, 248 So.2d 99 (La.App. 4th Cir. 1971) and Mottet v. Libbey-Owens-Ford Glass Co., 220 La. 653, 57 So.2d 218. In Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522, the Supreme Court, in a case whose facts are similar to those of the instant case, held that plaintiff's claim had not prescribed and said the following:
"The court, in Mottet v. Libbey-Owens-Ford Glass Co., supra [220 La. 657, 57 So.2d 219], construed the language of R.S. 23:1209 that `the limitation shall not take effect until the expiration of one year from the time the injury develops', to mean that prescription does not begin to run until the time the workman is unable to substantially perform the duties of his employment. This is a fair interpretation of the statute and in keeping with the beneficent object of its enactment. Development, as applied to a compensable injury, signifies something more than occurrence and pain. It connotes the time when disability to perform work becomes manifest either to the injured employee or his employer."
In the instant case, while plaintiff's original accident occurred in June, 1971, and while he suffered such severe pain in August that he sought medical treatment and in October he took time off without pay, he did continue to work for defendant. After leaving the construction division of defendant and returning with the maintenance division so as to obtain lighter work, he did in fact work for the maintenance division and continued to work despite severe pains until his condition became unbearable and he quit work in January. Under our mandate to interpret the Workmen's Compensation Law liberally in favor of the injured employee it would seem anomolous to hold that this plaintiff who continued to work despite pain but who was eventually forced to quit when his pain became unbearable, suffered his claim to prescribe during the time he continued to work. We therefore conclude that the development of his injury within the meaning of LSA-R.S. 23:1209 occurred on January 9 and his suit was filed on time.
As to the trial court's award of penalties and attorney's fees, after his injury on June 2, 1971, he was provided treatment at the expense of his employer. He made no claim for compensation benefits and returned to work within a week. No claim for compensation benefits was made within one year from the date of the accident. When demand was made for compensation benefits there existed a valid legal issue as to prescription. Attorney's fees and penalties should be granted only in a case where the employer is arbitrary and capricious in his refusal to pay benefits which are due. Since there were factual and legal disputes as to whether or not benefits were due penalties and attorney's fees are not applicable.
Accordingly, the judgment appealed from is affirmed but amended to delete the award of penalties and attorney's fees. Defendants are to pay all costs including the costs of this appeal.
Amended and affirmed.