337 So.2d 241 (1976)
Frank BRUNO, Individually and for the Community of Acquets and Gains and Barbara Bruno, Individually, Plaintiffs-Appellants,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY et al., Defendants-Appellees.
No. 5555.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1976.
Rehearings Denied September 20, 1976.
*242 Gravel, Roy & Burnes by Christopher J. Roy, Alexandria, for plaintiffs-appellants.
Stafford, Randow, O'Neal & Scott by Grove Stafford, Jr., Alexandria, for defendants-appellees.
McLure & McLure by John G. McLure, Alexandria, for intervenor-appellee.
Lewis O. Lauve, Alexandria, for executor-appellee.
Before DOMENGEAUX, GUIDRY and BERTRAND, JJ.
BERTRAND, Judge.
Frank Bruno and his wife instituted this suit to recover damages resulting from the death of their twelve (12) year old son, John Bruno. The defendants are Lewis O. Lauve, Sr. and his insurers, Hartford Accident and Indemnity Company and Hartford Fire Insurance Company.
State Farm Fire and Casualty Company intervened for the amount paid to the Brunos under a policy covering Robert Kubes, the boy who fired the shot that caused the death of John Bruno. State Farm also instituted a separate suit against Hartford Accident and Indemnity Company and Hartford Fire Insurance Company. These cases were consolidated for trial.
The trial court rendered judgment against the Brunos and the intervenor. Both have appealed. We affirm.
Hartford Accident and Indemnity Company and Hartford Fire Insurance Company answered the appeal, contending that the trial court erred in failing to maintain the exception of no cause of action and a motion for summary judgment filed on their behalf. A careful review of the Brunos' petition shows that their allegations did in fact state a cause of action. The trial court was correct in overruling the exception of no cause of action.
An appeal does not lie from the trial court's refusal to maintain a motion for summary judgment. LSA-C.C.P. Art. 968. Comment (d) of Article 968 states that a trial court's action in overruling a motion for summary judgment may be considered under the appeal from the final judgment in the case. We do not agree with that comment, nor did the court in Ellermann v. Matthew, 165 So.2d 850, 853 (La.App. 4th Cir. 1964). Comments form no part of a statute, are not binding, and are merely aids to interpretation.
It is our opinion that a denial of a motion for summary judgment is not reviewable even upon appeal from the final judgment on the merits. There is nothing in the instant case to warrant a departure from what we consider to be the general rule of law. Trial courts are consistently admonished to proceed cautiously in granting a summary judgment if any doubt exists as to the right of a party to a trial. Allowing review of the trial court ruling would put *243 the appellate court in the position of trying the question of doubt in the mind of the trial judge; furthermore, if such review was allowed, one who had sustained his position after a fair hearing of the whole case might nevertheless lose, because on the hearing of the motion, he had failed to offer proof satisfactory to the appellate court. For cases supporting this view, see 15 A.L.R.3d 922, et seq.
We agree with the ruling of the court in the case of Bourgeois v. Brown and Root, Inc., 303 So.2d 217 (La.App. 4th Cir. 1974), which involved an appeal after trial on the merits. The court of appeal in Bourgeois refused to consider an appeal by the defendants from the trial court's denial of a motion for summary judgment.
In the case of Honeycutt v. Town of Boyce, 327 So.2d 154 (La.App. 3rd Cir. 1976), writ of review issued, La., 330 So.2d 317, a different panel of judges of this court held that where the trial court sustains an exception of no cause of action, denies a motion for summary judgment, and the better disposition of the matter would be by summary judgment, the appeal court could review and overrule the denial of a motion for summary judgment. The cases upon which the panel relied for this decision, Roloff v. Liberty Mutual Insurance Co., 191 So.2d 901 (La.App. 4th Cir. 1966) and Spillers v. Northern Assurance Co. of America, 254 So.2d 125 (La.App. 3rd Cir. 1971), writ refused, are not on point. The movants in both the cited cases filed alternative pleadings of no right or no cause of action and a motion for summary judgment. The trial courts sustained the exception of no right or no cause of action and dismissed the suit without deciding the motions for summary judgment. The courts of appeal held that the appropriate procedure would have been to grant summary judgments rather than sustaining the exceptions of no right or no cause of action. They, therefore, granted the motions for summary judgment which had not been considered by the trial judges.
In our opinion there is no review of a denial of a motion for summary judgment. Furthermore, a ruling on the motion for summary judgment will not affect the outcome of this litigation inasmuch as we are affirming the judgment of the trial court dismissing plaintiffs' suit.
The trial court summarized the facts of the case as follows:
"On September 2, 1973, Robert Kubes, who was then 16, accompanied Lewis Lauve, Jr., then age 15 and Peter Lauve on a hunting trip. They returned early in the afternoon to the Lauve residence and parked in the Lauve driveway. The hunting paraphernalia was in the trunk of the car and either Lewis Lauve or Robert Kubes opened the trunk, in order to unload the automobile. At this point John Bruno arrived on his bicycle. According to Kubes, Bruno remained on his bicycle, balancing himself against the automobile, in the area of the right rear panel. Other evidence would place Bruno several feet from the car. The Lauve brothers were in the immediate vicinity with Lewis Lauve standing several feet behind Kubes. A dare was entered into between Bruno and Kubes over Kubes firing his shotgun in the city limits. Testimony is in some disagreement as to whether it was Kubes or John Bruno who initiated the dare. In any event, the dare dealt with Robert Kubes firing the gun at a bird in a tree. Kubes removed his unloaded double barrel shotgun from the trunk and, with the dare having been made, removed a shell from his vest, which was still in the trunk. He began to play the `game' which consisted of placing the shell in a chamber, raising the gun and pulling the trigger to the empty chamber then declaring to Bruno that `it must be a dud.' He would then lower the gun, break it, place the shell in the other chamber, raise the gun and again pull the trigger to the empty chamber, and again call the shell a dud. This occurred 2 or 3 times and took perhaps 2 or 3 minutes. Kubes was standing 2 to 3 feet from the rear of the car. After Kubes pulled the trigger of the empty chamber for the last time he lowered the shotgun and at the *244 same time turned in the direction of John Brunno. At that time the shotgun discharged killing Bruno instantly. At no time subsequent to removing the shell from the vest did Kubes have any further physical contact with the automobile."
We adopt the trial judge's findings of fact as our own.
Plaintiffs allege that Hartford Insurance Company, the automobile liability insurer of Lewis Lauve, Sr., is liable on the grounds that Kubes was an omnibus insured under the policy and that the accident occurred while the Lauve vehicle was being either "loaded" or "unloaded." State Farm, the homeowner insurer of Kubes which paid $25,000.00 to the Brunos, seeks recovery from Hartford under the same theory. In the alternative, plaintiffs allege that Robert Kubes was an insured under Lewis Lauve's homeowner's policy.

I. COVERAGE UNDER THE AUTOMOBILE POLICY
The policy in question provides coverage for any bodily injury arising out of the "use" of an automobile. The term "use" includes any loading and unloading thereof.
The Brunos urge that since at the time of the accident, Kubes was, "in the process of lowering the gun, to unload the gun, to load the shell vest and then to remove all of his equipment from the automobile and go home," he was in fact "using" the automobile.
The trial court found as a matter of fact that Kubes was still in the process of playing the "game" with John Bruno when the fatal shot was fired.
It is well settled that factual conclusions of the trial court must be given great weight by a reviewing court. Canter v. Koehring, 283 So.2d 716 (La.1973); Roussel v. Colonial Sugars Co., 318 So.2d 37 (La.1975). The trial court's findings must be clearly erroneous before an appellate court may substitute its own findings. Guidry v. State, Through Department of Hospitals, 317 So.2d 222 (La.App. 3rd Cir. 1975), writs refused; Crooks v. Belden Corporation, 334 So.2d 725 (La.App. 3rd Cir. 1976).
A review of the trial transcript shows that on at least two occasions, Robert Kubes testified that he turned to talk to John Bruno as he lowered the gun. Therefore, sufficient evidence was adduced to support the trial court's findings that the "game" would not have been finished until Robert Kubes delivered a closing remark to John Bruno.
In our opinion, even if Kubes had not intended to make a closing statement to John Bruno, while lowering his gun, he was nevertheless still engaged in sport and had not returned to the loading and unloading procedure when the shot was fired.
The Louisiana Supreme Court in the case of Fertitta v. Palmer, 252 La. 336, 211 So.2d 282 (1968), held that a "common sense" approach should be used in determining whether the negligent act which caused the injury was a natural and reasonable consequence of the use of the vehicle, within the contemplation of the parties negotiating the insurance contract.
The test to be used for this determination is twofold: (1) was the vehicle being used at the time of the accident; and (2) was the use thereof directly connected with or a cause of the ensuing accident. Ramsey v. Continental Insurance Company, 286 So.2d 371 (La.App. 2nd Cir. 1973).
We conclude that, in applying the above test to the facts, Robert Kubes had deviated from making a "use" of the vehicle and had not returned to the process of loading or unloading. To hold otherwise would result in judicially extending the insurance coverage beyond the contemplation of the parties who negotiated the contract.

II. COVERAGE UNDER THE HOMEOWNER'S POLICY
The homeowner's policy issued to Lauve included, as an insured, "any other person under the age of twenty-one in the care of any insured."
*245 Kubes testified that when he was at the Lauve's home, he would obey the wishes of any member of their household, as he expected them to do when at his home. The Brunos contend that this amounted to Kubes being in the care of an insured as contemplated by the policy.
We find this position to be untenable. At the time of the accident there was no adult present. The only insureds under whose care Kubes could have possibly been were Peter Lauve and Lewis Lauve, Jr., who were both younger than Kubes. As pointed out by the trial judge, "under the care of another" ordinarily connotes being under the guidance, supervision, control, management or custody of another. Certainly the Lauve brothers were not in such a position with respect to a friend, their senior, who was on their property for a few minutes. We do not believe that the policy in question intended to make Kubes an insured under these circumstances.
For the above reasons, the judgments appealed from are affirmed. Costs to be divided between the Brunos and State Farm.
AFFIRMED.