I,WOODARD, Judge.
This is an appeal that arises out of a concursus proceeding. Samedan Oil Corporation (Samedan) filed a concursus proceeding and deposited $488,974.04 into the registry of the trial court. Samedan took this action as one of its contractors, Ultra Fabricators, Inc. (Ultra Fab), refused to pay some of its contractors for work performed on Samedan’s construction projects. One day before Samedan filed the concursus proceeding, Essex Crane Rental Corporation (Essex), one of Ultra Fab’s contractors which provided six large cranes for the Samedan work, filed a lien and privilege in the mortgage records of Iberia Parish, Louisiana, contending that it had a claim against a portion of the funds deposited in the registry of court in the concursus proceeding. Subsequently, Samedan named Essex as an additional defendant in the concursus proceeding. Samedan then settled all claims except for those of Ultra Fab and Essex. The trial court required it to file a bond with the court in the amount of $200,000.00 to cover the value of the Essex claims. Both parties filed motions for summary judgment. The trial court held that the Essex lien was invalid and rejected Essex’s | ^unjust enrichment argument against Samedan. It granted Samedan’s motion for summary judgment and denied Essex’s motion for summary judgment that it was entitled to $199,290.00. Essex devolutively appeals. We affirm.
FACTS
On November 29, 1995, Essex filed a lien against Ultra Fab, Samedan, Hall Houston Oil Company (Hall Houston), and Vaster Resources, Inc. (Vaster). Pursuant to written lease agreements, Essex leased six large cranes to Ultra Fab. Ultra Fab used the cranes to construct steel platforms and structures for Samedan, Hall Houston, and Vaster. Essex claimed that it is owed $199,290.00 from Ultra Fab for rentals for the period running from September through December of 1995. Likewise, Essex filed a lessor’s lien and privilege against Union Oil Company of California and Smit International (Americas), Inc., claiming the same rentals.
On November 30, 1995, Samedan filed a concursus proceeding, including Ultra Fab. It deposited $488,974.04 into the registry of the trial court. Ultra Fab had not paid eight of the nine suppliers and subcontractors for the Samedan jobs. On December 7,1995, Samedan filed an amended petition of concursus, adding Essex and others as additional defendants. The tenth defendant, M.C. Bank, was an Ultra Fab lender that claimed balances due to Ultra Fab because of a security interest. Part of the relief which Samedan sought was the release of the Samedan jobs. The trial court issued a temporary restraining order and injunction, ordering the defendants to allow Samedan to take possession of its equipment.
On January 11, 1996, Essex filed a separate action against Ultra Fab and Same-dan, seeking judicial recognition of its lien and payment of $199,290.00. On February 16, 1996, Essex filed its answer and a reconventional demand against Samedan in this proceeding, seeking the same relief. Essex’s reconventional demand and lien, as well as a separate action against Samedan, all allege that, pursuant to an agreement of July 1, 1995 between Hall Houston and *849 its successor in interest, Samedan, Ultra Fab used the leased Essex’s cranes and equipment in construction and fabrication of:
A. Job 01-366, wet/dry tank skid package for High Island Block A-547;
|3B. Job 03-334, tripod jacket, piles, conductor, riser, boat landing (2), deck with ICP and heliport for Eugene Island Block 286 ‘K’; and
C. Job 03-357, tripod jacket, piles, deck and heliport for High Island Block A-325.
Essex claims that Ultra Fab completed these jobs for the account of Hall Houston and Samedan, at Ultra Fab’s job site, at the Port of Iberia, Iberia Parish, Louisiana. It should be noted that Hall Houston conveyed all of its interest in the above jobs to Samedan, effective September 1, 1995, and that it was bound by the July 1, 1995 agreement between itself and Ultra Fab. Essex contends that Ultra Fab failed to pay the invoices for the rental of the cranes and other equipment, which resulted in Essex filing the lien. The lien attempts to secure the rentals due Essex for Ultra Fab’s use of the cranes and equipment in completing the above jobs for Hall Houston and Samedan. Essex prayed for a judgment in its reconventional demand against Ultra Fab and Samedan, recognizing and maintaining its “Lessor’s Lien and Privilege ... on the wet/dry oil tank skid package, tripod jackets, piles, conductor, riser, boat landings, decks, heliports, and component parts thereof,” constructed on the premises of Ultra Fab and asked for unpaid rentals. It amended its reconven-tional demand against Samedan to make an unjust enrichment claim.
Samedan answered Essex’s the recon-ventional demand and amended reconven-tional demand, denying the allegations. It also asserted a peremptory exception of no cause of action and several affirmative defenses; specifically, that Essex had failed to comply with all the requirements of the applicable lien statutes and that it had not been unjustly enriched at Essex’s expense. It asked for judgment in its favor.
On June 10, 1996, Essex filed a motion for summary judgment, claiming that there was “no material issue of fact with regard to the existence of certain leases of six cranes by Essex as lessor to [Ultra Fab] as lessee, [and] that Ultra Fab owes Essex $199,290.00.” Essex alleged that its cranes were used “almost exclusively” on the Samedan jobs, thus entitling Essex to collect all of its rentals from Samedan for the period of September through December of 1995. Samedan opposed the motion for summary judgment with evidence establishing that the Samedan jobs were not the only ones Ultra Fab performed during the relevant time period. The trial court, finding a dispute of material fact, denied the motion for summary judgment.
| thereafter, most of the parties reached a settlement of the concursus proceeding except for Essex’s claims against Samedan and Ultra Fab. The trial court approved the settlement on August 7, 1997 and signed an order authorizing the disbursement of the funds in the registry of the court to the settling subcontractors and suppliers. The order reserved all claims and defenses concerning Ultra Fab, Same-dan, and Essex. Samedan was ordered to file a bond of $200,000.00 into the registry of the court, pending resolution of the Essex claims.
On August 11, 1997, Samedan filed a motion for summary judgment against Essex, arguing that the lien was ineffective under the Louisiana Private Works Act and the Oil Well Lien Act. Essex opposed Samedan’s motion, now, claiming that it was entitled to recover its unpaid rentals from Samedan under the doctrine of unjust enrichment. It renewed its original summary judgment motion, claiming it could establish its entitlement to the funds in the registry of the court over the rights of Ultra Fab and Samedan.
On December 12, 1997, the trial court held a hearing on the cross-motions for summary judgment. Following the hear *850 ing, the court issued its reasons for judgment on February 2, 1998. It found that the Essex lien was invalid regarding Jobs 03-334 and 03-357. It granted Samedan’s motion and completely denied Essex’s. It found disputed issues of fact concerning Essex’s claim on Job 01-366 and reserved those issues for trial, and signed the judgment on April 20, 1998. The parties settled the remaining issue involving Job 01-366 and moved for a final judgment. That motion was granted, and the judgment was signed on June 15, 1998. Essex then filed a petition for devolutive appeal on June 25, 1998.
ASSIGNMENTS OF ERROR
Essex alleges that the trial court erred in:
1. Denying the first Essex motion, which was uncontested as to liability, with a simple, non-specific finding of disputed facts and inferences from these facts.
2. Granting, in part, Samedan’s motion for summary judgment and denying the second Essex motion, in the following particulars:
A. In improperly finding the Essex Lien to be invalid with respect to Job 03-334 and Job 03-357;
[fiB. In failing to recognize the lack of competing claims in the concur-sus; and
C. In rejecting Essex’s alternative claim for unjust enrichment.
Samedan presents the following issues for review:
1. Given the strict construction of liens under Louisiana law, is the Lien valid and enforceable against Samedan where the evidence shows Essex failed to comply with the express requirements of both the Louisiana Private Works Act and the Louisiana Oil Well Lien Act?
2. Is Samedan, as the party instituting this concursus action, precluded from claiming funds out of the registry of the Court where the evidence shows Samedan denied liability to Essex and specifically prayed in its Answer to the Reconventional Demand by Essex for judgment in its favor denying the claims of Essex?
3. Has Samedan been unjustly enriched to the extent of the Essex rentals where the evidence shows Same-dan paid in excess of the contract price of the jobs at issue, and that Essex has other remedies at law for the recovery of those rentals?
4. Is the trial court’s denial of the first motion for summary judgment by Essex subject to review on appeal of the trial court’s final judgment in this matter?
LAW
Motion foe Summary Judgment
Appellate courts are required to review summary judgments de novo under the same criteria that governed the trial court’s consideration of whether or not summary judgment was appropriate. Schroeder v. Board of Sup’rs, 591 So.2d 342 (La.1991); Soileau v. D & J Tire, Inc., 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, writ denied, 97-2737 (La.1/16/98); 706 So.2d 979.
The appellants allege that the trial court erred in granting a summary judgment to Samedan. The law of summary judgment implemented in La.Code Civ.P. art. 966 was amended by Act No. 9 of the First Extraordinary Session of 1996. Further, in 1997, the legislature amended La.Code Civ.P. art. 966 to overrule, legislatively, | (jurisprudence inconsistent with Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96); 685 So.2d 691. In Hayes, we found that the legislature overruled the presumption against the grant of summary judgment. We stated that the amendment “leveled the playing field,” by removing the overriding presumption in favor of a trial on the merits and by scrutinizing, equally, the *851 supporting documents submitted by the mover and non-mover.
La.Code Civ.P. art. 966 now provides, in pertinent part, that “[t]he summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action.... The procedure is favored and shall be construed to accomplish those ends.” In other words, summary judgment shall be applied liberally. Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97); 702 So.2d 323.
Summary judgment is proper when “the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,” show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).
La.Code Civ.P. art. 966, as amended, charges the moving party with the burden of proof that summary judgment is appropriate. In doing so, the mover’s supporting documentation must be sufficient to establish that no genuine issue of material fact remains at issue. Such a burden is not unlike that assigned to the mover before the amendments. Townley, 702 So.2d 323. Once the mover makes a pri-ma facie showing that there is no genuine issue as to a material fact and that summary judgment should be granted, the burden to produce evidence shifts to the non-mover. However, the amendments to La. Code Civ.P. art. 966 heightened the non-mover’s burden to rebut the showing, made by the mover, of the non-existence of a genuine issue of material fact. Townley, 702 So.2d 323. The non-mover must sufficiently establish the existence of an essential element of his claim on which he is to bear the burden of proving at trial. Id. Furthermore, La.Code Civ.P. art. 967 provides, in pertinent part:
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his responses by affidavits or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
|7The threshold question in reviewing a trial court’s grant of summary judgment is whether a genuine issue of material fact remains. Kumpe v. Louisiana, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, writ denied, 98-50 (La.3/13/98); 712 So.2d 882. We must next determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment. Id. Thus, summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts. Id. Facts are material if they determine the outcome of the legal dispute. Soileau, 702 So.2d 818. The determination of the materiality of a particular fact must be made in light of the relevant substantive law. Id.
The Essex Issues
(1) Essex’s First Motion for Summary Judgment
We are precluded from review of this assignment of error. See the discussion in The Samedan Issues (4) below.
(2)(A) Finding the Essex Liens Invalid
The trial court found that Essex’s liens were invalid concerning jobs 03-334 and 03-357. We will adopt and quote from the court’s opinion, at length, regarding this issue, as we find its analysis to be excellent.
THE LOUISIANA PRIVATE WORKS ACT
This Court finds that Essex Crane established by the various lease agree *852 ments and affidavit of the comptroller for Essex Crane, Carl Maraño, that the cranes were leased to Ultra Fab for the Samedan projects and that it never received any payments from Ultra Fab for the rentals from August, 1995 to December 1995. Essex has also established that a Lessor’s Lien and Privilege was filed on November 29,1995.
Liens and privileges are to be strictly construed against claimants and liberally construed in favor of owners as they are in derogation of the common rights of owners, Louisiana National Bank of Baton Rouge v. Triple R Contractors, Inc., 345 So.2d 7 (La.1977). Therefore, Essex Crane must comply with all necessary requirements of any statute or law it claims establishes a lien or privilege.
|sAs Samedan points out, the Louisiana Private Works Act only applies to immovables. LSA-R.S. 9:4801. Thus, Essex Crane’s lien under this Act would only attach to the platforms/structures constructed by Ultra-Fab Jobs 03-334 and 03-357, assuming these “structures” were “immovables” and assuming its lien was proper under the statute.
LSA-R.S. 9:4802 provides in part:
A. The following persons have a claim against the owner and a claim against the contractor to secure payment of the following obligations arising out of the performance of work under the contract:
[[Image here]]
(4) Lessors, for the rent of movables used at the site of the immovable and leased to the contractor or a subcontractor by written contract.
[[Image here]]
G. (1) For the privilege under this Section to arise, the lessor of the movables shall deliver a copy of the lease to the owner and to the contractor not more than ten days after the movables are first placed at the site of the immovable for use in a work.
The official comment for subsection G states that its purpose is to give notice to the owner and the contractor that equipment being used by a contractor is leased and thus potentially creating liability under the Private Works Act.
LSA-R.S. 9:4831 provides in part:
[[Image here]]
C. Each filing made with the recorder of mortgages pursuant to this Part which contains a reference to immovable property shall contain a description of the property sufficient to clearly and permanently identify the property. A description which includes the lot and/or square and/or subdivision or township and range shall meet the requirement of this subsection ...
No allegations are contained in the Lien or Reconventional Demand which indicates Essex Crane provided a copy of the crane lease agreements to Hall Houston, Samedan’s predecessor. Indeed, the affidavit of Benny Thomas, Chief Financial Officer of Hall Houston, indicates Essex Crane never provided copies of the lease agreements as required under the Louisiana Private Works Act. This Court finds that Essex Crane likewise did not provide Samedan with copies of the lease agreements either.
| {Additionally, this Court further finds that while the physical location on which Ultra Fab performed its work was described, the lien did not identify any of the “steel structures” that (sic) been had fabricated. The description is insufficient to clearly and permanently identify the property sought to be encumbered. The wording describing the property as “steel platforms/structures” with no block number or specific legal description of Samedan’s property is insufficient. Since Essex Crane did not comply with the legal requirements of the statute, its lien against Samedan was not *853 preserved under the Louisiana Private Works Act, even assuming that the “structures” were immovables.
THE LOUISIANA OIL WELL LIEN ACT
The Louisiana Oil Well Lien Act, 9:4861, et seq., creates a hen and privilege in favor of anyone who performs any labor or service or furnishes in connection with any oil, gas or water well. Supreme Contractors, Inc. v. Halliburton Logging Services, Inc. (La.App. 1 Cir. 2/23/96), 668 So.2d 1363 [writ denied, 96-660 (La. 4/26/96); 672 So.2d 673 ]. LSA-R.S. 9:4861 provides in pertinent part:
A. Any person who performs any labor or service in drilling or in connection with the drilling of any well or wells in search of oil, gas or water ... has a privilege on all oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water wells and the lease whereon the same are located, and on all drilling rigs, standard rigs, machinery, pipelines ... and other structures thereto attached or located on the lease....
LSA-R.S. 9:4862 provides in part:
A. The following persons have a privilege over the property described in R.S. 9:4863 to secure the following obligations incurred in operations:
[[Image here]]
(7) A lessor for the rent of a movable leased to an operator or contractor used in operations and that accrues while the movable is located on the well site.
Since the Louisiana Oil Well Lien Act is designed to protect a lessor who leases equipment or movables which are placed on an oil, gas or water well this Act is not applicable. The Essex cranes were not placed on any well site, but were used only in the Ultra-Fab yards located at the Port of Iberia in Iberia Parish as described in Essex Crane’s lien. Essex Crane, therefore, has no valid and enforceable privilege under the Louisiana Oil Well Lien Act. LSA-R.S. 9:4862.
As there are no material facts in dispute concerning the Essex lien and no legal error by the trial court, its decision, upholding Samedan’s motion for summary | judgment and finding the Essex liens invalid, is affirmed. This assignment of error is without merit.
(B) Lack of Competing Claims in the Concursus
Essex argues that because of Sam-edan’s partial settlement of the concursus proceedings and deposit in the registry of the court a $200,000.00 bond to pay the three remaining claimants, Essex, Ultra Fab, and Samedan, it is entitled to be paid the proceeds of the fund. This is not correct. Essex had to first establish its legal right to the funds. The trial court stated:
Essex Crane argues that Samedan “expanded” the concursus proceeding by depositing the $200,000.00 bond into the registry of the court after compromising the claims of all other claimants. Same-dan filed this concursus proceeding on November 30, 1995, only one day after Essex Crane filed its Lessor’s Lien and Privilege. Seven days later after learning of Essex Crane’s lien, Samedan amended it concursus proceeding to add Essex Crane as a defendant to enable Essex Crane to assert its claim to the funds “contradictorily” along with the other competing claimants pursuant to the provisions of LSA-C.C.P. art. 4651. Under Tanner, supra, [Tanner Heavy Equipment Co., Inc. v. Mid-State Sand & Gravel Co., Inc., 614 So.2d 142 (La. App. 3 Cir.1993) ] Essex Crane and the other competing complaints (sic) were first required to establish their respective claims, and only then were they to be paid in order of priority until the fund is exhausted. At the time of the *854 compromise of the other competing parties, the funds on deposit were depleted. Samedan was ordered to post a $200,-000.00 bond pending resolution of the reserved claims of Samedan, Essex Crane, and Ultra Fab. Since Essex Crane and Ultra Fab had not yet established their right to claim the funds, LSA-C.C.P. art. 4658 specifically provides that the plaintiff in a coneursus may deposit into the registry of the court, with leave of the court, money due one or more defendants as it accrues from time to time. Since Essex Crane was a competing claimant almost from the inception of the coneursus, Samedan was allowed to deposit a bond into the registry of the court to secure the competing claims of Samedan, Essex Crane and Ultra Fab when the compromise of the other claimants exhausted the funds on deposit. LSA-C.C.P. art. 4658. The coneursus is proper, and Samedan may assert its right to cancellation of its bond.
(Emphasis in original.)
Having failed to establish its legal right to the proceeds of the fund due to the failure of its lien to comport with the requirements of the law or a right under the Intheory of unjust enrichment (see the discussion below), as a matter of law, Essex is not entitled to an award from the fund. This assignment of error is without merit.
(C) Essex’s Unjust Enrichment Claim
Essex contends that the trial court erred in denying its claim against Same-dan under the theory of unjust enrichment. The trial court stated:
UNJUST ENRICHMENT
Essex Crane also asserts an unjust enrichment claim as to all of the sums it claims are due. Essex Crane alleges that it has satisfied by documentation the elements necessary to prove this claim, i.e. 1) enrichment; 2) impoverishment; 3) a causal relationship between the enrichment and the impoverishment; 4) an absence of justification or cause for the enrichment or impoverishment; and 5) no other remedy exists at law. Fogleman v. Cajun Bag & Supply Co., 93-1177(La.App. 3 Cir. 6/15/94), 638 So.2d 706, writ denied, 94-1900 (La.10/28/94), 644 So.2d 375. Essex Crane alleges that 1) Samedan was enriched because the Essex cranes were absolutely necessary for the construction of all three of the Samedan jobs; 2) Essex Crane was impoverished because it has not been paid its crane rentals; 3) a causal relationship exists between the enrichment and the impoverishment because Ultra Fab leased those cranes to perform the Sam-edan jobs; 4) nothing exists between Samedan, as enrichee (sic), and Essex Crane, as impoverishee (sic), to justify Samedan’s enrichment since Samedan argues that no contract exits(sic) between the two; and 5) Essex Crane has no other means of collecting the rentals. Although other liens were filed by Essex Crane against Unocal and Smith America’s for the same crane rentals Essex is trying to collect from Samedan, these hens will not result in any payment. According to Essex, the Unocal lien was canceled pursuant to proper demand and the Smith America’s lien was dismissed by the Court in a separate proceeding.
Samedan contends that Essex Crane does not have an unjust enrichment claim since Essex has other remedies at law which preclude recovery from Same-dan. Scott v. Wesley, 589 So.2d 26 (La. App. 1st Cir.1991); Deubler Electric, Inc. v. Knockers of Louisiana, Inc., 665 So.2d 481 (La.App. 5th Cir.1995); Royal Oldsmobile Co., Inc. v. Yarbrough, 425 So.2d 823 (La.App. 5th 1982); and West Building Materials, Inc. v. Daley, 476 So.2d 554 (La.App. 3rd Cir.1985). Essex Crane has a remedy based upon its lease agreement with Ultra Fab and has filed a separate lawsuit against Ultra Fab, Samedan, and Samedan’s predecessor for payment of the rentals (Iberia Parish docket number 83,429B). Same- *855 dan points out that even though Ultra Fab may be insolvent, this fact does not prevent the application of the rule established by the easelaw. West Building Materials, Inc. v. Daley, 476 So.2d at 559.
| 1?,Samedan further contends that Ultra Fab was the party that was unjustly enriched since Samedan paid Ultra Fab for the majority of the work done on the two main jobs prior to commencing this eoncursus proceeding. It was Ultra Fab’s obligation to pay Essex Crane. Newt Brown Contractor, Inc. v. Michael Builders, Inc. 569 So.2d 288 (La.App. 2d Cir.1990). In Newt, the Second Circuit denied a subcontractor’s claim for unjust enrichment against the general contractor and the school for services and materials rendered because the school had paid the general contractor the amount required by the contract for the materials and services. Additionally, the court noted that the plaintiff also had a remedy under the Private Works Act, but allowed it to lapse by filing the lien twenty-three days after the deadline to file. The plaintiff also pursued, and obtained, a judgment against the general contractor and the surety.
As in Newt, this Court finds that Essex Crane does not meet all five requirements of an unjust enrichment claim since Essex has another remedy at law and since Samedan was not unjustly enriched. On November 11, 1996, Essex Crane filed a separate lawsuit, bearing docket number 83,429B in Iberia Parish, against Ultra Fab, Samedan, and Same-dan’s predecessor seeking payment of its crane rentals. That lawsuit is ongoing, and no stay orders or dismissals have been filed. Additionally, this Court finds that Samedan was not unjustly enriched since it paid the majority of the invoices to Ultra Fab, and Ultra Fab failed to pay Essex Crane for the rentals. The balance of the monies owed to Ultra Fab were paid to other claimants in this concursus. Although Essex Crane established that it was not paid for these jobs, it did not offer any proof that Samedan paid nothing for the jobs so that Samedan was unjustly enriched. This Court finds that Essex Crane has failed to prove the elements of an unjust enrichment claims against Samedan.
(Emphasis in original.)
We find no error in the trial court’s decision to deny Essex’s unjust enrichment claim against Samedan, by summary judgment, since there are no material facts in dispute, and Essex does have another legal remedy available, which it is pursuing. As a matter of law, it is not entitled to the proceeds of the fund under this theory. This assignment of error is without merit.
The Samedan Issues
(1) The Lien
Because of our discussion in The Essex Issues 2(A) above affirming the trial court’s decision concerning this issue, we pretermit further discussion of this matter.
113(2) The Samedan Concursus Claims
Samedan is one of the three remaining claimants to the fund, which consists of the bond of the $200,000.00 it deposited. Our law recognizes that a party, invoking the concursus, may make a claim to the funds it deposited. See Louisiana Intrastate Gas Corp. v. Muller, 290 So.2d 888 (La.1974); La.Code Civ.P. art. 4652.
Essex contends that it is the only remaining claimant to the fund and, thus, entitled to its proceeds by default. We disagree. Essex had to establish its legal right to the proceeds, which it failed to do. As its lien is invalid, and because the doctrine of unjust enrichment is not applicable, Samedan was entitled to a judgment, dismissing Essex’s claims. Thus, it is Samedan who may claim the funds it deposited in the registry of the court.
(3) Samedan — Unjustly Enriched?
See our discussion in The Essex Issues 2(c) above.
*856 (4) Review of the First Essex Motion for Summary Judgment
Relying upon La.Code Civ.P. art 968 and Bruno v. Hartford Accident & Indem. Co., 337 So.2d 241 (La.App. 3 Cir. 1976), Samedan contends that we may not review the trial court’s decision concerning its denial of Essex’s first motion for summary judgment. Bruno holds that denials of summary judgment motions are not reviewable on appeal, even following a final judgment by the trial court. We agree. We will not review this issue.
CONCLUSION
The trial court’s decision, finding the Essex lien to be invalid regarding Jobs OS-334 and 03-357 and that Essex did not have a claim under the doctrine of unjust enrichment, is affirmed. Essex is cast with the costs of this appeal.
AFFIRMED.