FARMERS INSURANCE GROUP, Respondent,

v.

Mark A. CHAPMAN, Appellant.

No. C3–87–1375.

Court of Appeals of Minnesota.

Dec. 29, 1987.

Louise A. Dovre, Rider, Bennett, Egan & Arundel, Minneapolis, for respondent.

Richard Newgren, Bloomington, for appellant.

Heard, considered and decided by CRIPPEN, P.J., and FOLEY and LANSING, JJ.

## OPINION

LANSING, Judge.

This case raises the insurance coverage issue of whether an accidental gunshot injury arose from the use and maintenance of a motor vehicle.

### FACTS

The facts are not disputed. On November 8, 1984, Mark Chapman and his friend Brock Dahl, using a truck belonging to Chapman's brother, spent the day deer hunting. Near the end of the day, at their last stop, they placed their guns on the hood of the vehicle and waited inside the vehicle for deer to appear. After waiting approximately an hour, they decided to go home.

Both Dahl and Chapman got out of the vehicle to unload their rifles and replace the guns in cases. Both stood near the truck with their respective doors open as each unloaded his gun. In the process, Dahl's gun accidentally discharged and Chapman was struck by the bullet. The injury to his arm, stomach and foot required multiple surgeries, and his left arm remains disabled and scarred.

When Farmers Insurance, the no-fault insurer of the pickup, denied coverage, Chapman brought this action. Upon cross-motions for summary judgment, the trial court determined that Chapman's injury was not covered by the no-fault policy because the injury did not arise out of the use or maintenance of the pickup. Chapman appeals the summary judgment in favor of Farmers Insurance.

### ISSUE

Did the trial court err in determining that the gunshot injury did not arise out of the use or maintenance of a vehicle?

### ANALYSIS

Minn.Stat. § 65B.44 requires automobile insurers to provide basic economic loss benefits for "all loss suffered through injury arising out of the maintenance or use of a motor vehicle." Minn.Stat. § 65B.44, subd. 1 (1984). The statute defines maintenance or use as the

> maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, and alighting from it. Maintenance or use of a motor vehicle does not include * * * conduct in the course of loading and unloading the vehicle unless the conduct occurs while occupying, entering into or alighting from it.

Minn.Stat. 65B.43, subd. 3 (1984).

In a recent case, *Continental Western Insurance Co. v. Klug*, 415 N.W.2d 876 (Minn. 1987), the Minnesota Supreme Court clarified the analysis for determining whether an accident arises out of the use

or maintenance of a vehicle. The *Klug* analysis requires consideration of (1) the extent of causation between the vehicle and the injury; (2) whether an act of independent significance broke the causal link; and (3) the type of "use" to which the vehicle was committed at the time of the injury.

The first factor, the extent of causation, requires the vehicle to have been an "active accessory" in causing the injury. *Id.* (citing *Holm v. Mutual Service Casualty Insurance Co.,* 261 N.W.2d 598, 603 (Minn.1977)). This causation standard is "something less than proximate cause in the tort sense and something more than the vehicle being the mere situs of the injury." *Klug* (quoting *Tlougan v. Auto–Owners Insurance Co.,* 310 N.W.2d 116, 117 (Minn. 1981)).

The first factor of the *Klug* test thus requires an analysis of the extent to which the pickup caused Chapman's injury. We note initially that the causation was not direct in a physical sense. Although both Chapman and Dahl were in physical proximity to the vehicle, neither was in contact with it. More significantly, neither the vehicle itself nor its position was physically connected to the accidental discharge of the gun.

Chapman, however, advances an alternative, nonphysical theory of causation to support his contention that the injury arose from the use of the vehicle. Citing Minn. Stat. § 100.29, subd. 5 (1984), he argues that because the law prohibits the transportation of loaded guns in a vehicle, the vehicle, in effect, caused the injury. In analyzing this argument, the trial court distinguished between an injury causally related to the vehicle itself and an injury which is only causally related to the use of the vehicle. We find that distinction instructive. Although the lawful use of the vehicle to transport guns can only be accomplished by unloading the rifles, this action is incidental to the *use* of the vehicle, not the vehicle itself. The vehicle itself was not sufficiently linked to the discharge of the gun to become an active accessory to Chapman's injury.

The first *Klug* factor, causation, focuses on the relationship between the vehicle and the injury, not the use of the vehicle and the injury. As the trial court stated,

> If Dahl had accidentally bumped his rifle against the truck or its open door while in the process of unloading, thereby causing the accidental discharge of the rifle, the truck would clearly be an "active accessory." * * * However, under the facts as agreed, there was no contact between the rifle and the truck, and the truck cannot be considered an "active accessory."

*See also Fire & Casualty Insurance Co. v. Illinois Farmers Insurance Co.,* 352 N.W. 2d 798 (Minn.Ct.App.1984).

The last two factors of the *Klug* analysis, which operate to restrict coverage, apply only if the requisite degree of causation exists under the first factor. Because we conclude that the trial court properly excluded coverage under the causation factor, we do not address the remaining elements of the *Klug* test.

## DECISION

The trial court correctly held that a gunshot injury incurred while unloading a gun in preparation for transporting it in a vehicle did not arise out of the maintenance and use of the vehicle.

Affirmed.