A92A1824. COLONIAL INSURANCE COMPANY OF CALIFORNIA v. LUMPKIN et al.
A92A1825. LUMPKIN v. COLONIAL INSURANCE COMPANY OF CALIFORNIA.
(428 SE2d 351)

POPE, Chief Judge.

Colonial Insurance Company of California ("Colonial") brought a declaratory judgment action against Stanley F. Castleberry, its insured on a policy of automobile liability insurance, James Stacy Lumpkin, Lowell Dan Hiers, and Georgia Farm Bureau Mutual Insurance Company, the uninsured motorist carrier. Colonial seeks a declaration that the terms of the policy it issued to Castleberry do not obligate it to pay any sums which its insured might be obligated to pay as damages arising out of an injury to Lumpkin on January 10, 1990. Both Colonial and Lumpkin filed motions for summary judgment. The trial court denied both motions and certified both orders for immediate review. We granted Colonial's application for an interlocutory appeal and Lumpkin filed a cross-appeal.

The facts material to this appeal are not in dispute. On the eve-

ning of January 10, 1990, Castleberry, Lumpkin, Hiers, and Steve Meadows were riding around in Castleberry's Chevrolet Blazer drinking beer. Castleberry customarily kept a pistol in the Blazer. After a while, Castleberry stopped his vehicle on a dirt road and exited the vehicle. While Castleberry was outside the vehicle and the vehicle was stationary, Hiers, still inside the vehicle, was handling Castleberry's pistol and the pistol discharged, accidentally injuring Lumpkin.

Colonial contends Lumpkin's injury did not arise out of the ownership, maintenance or use of the Blazer it insured, and therefore the trial court erred in denying its motion for summary judgment. When reviewing the denial of a motion for summary judgment, we must determine whether any genuine issues of material fact remain and whether the party moving for summary judgment is entitled to judgment as a matter of law. Since the facts material to these appeals are undisputed, the only remaining issue is whether either Colonial or Lumpkin is entitled to judgment as a matter of law.

Castleberry's policy covered injuries "arising out of the ownership, maintenance or use" of the insured vehicle. This language is typical of automobile liability insurance policies. See generally Annotation, Automobile Liability Insurance: What are Accidents or Injuries "Arising out of Ownership, Maintenance, or Use" of Insured Vehicle, 15 ALR4th 10, 15 (1982). As the Supreme Court of Alaska recognized in *Criterion Ins. Co. v. Velthouse*, 751 P2d 1 (Alaska 1986), relying on *Cameron Mut. Ins. Co. v. Ward*, 599 SW2d 13 (Mo. App. 1980), there are essentially five categories of accidental shootings involving motor vehicles. This case would fall into the category of cases in which the vehicle is the "mere situs" of the accidental shooting.[1] As the court noted in *Velthouse*, "[t]here is no coverage under these circumstances, because there is no causal connection between the discharge of the gun and the [intrinsic] use of the vehicle." *Velthouse*, 751 P2d at 3. This holding is consistent with our decisions in *King v. St. Paul Fire &c. Co.*, 201 Ga. App. 851 (412 SE2d 614) (1991) (holding no liability for injuries sustained by insured as he was shot while attempting to enter his vehicle) and *Bennett v. Nat. Union Fire Ins. Co.*, 170 Ga. App. 829 (318 SE2d 670) (1984) (finding no coverage under automobile liability insurance policy when insureds were injured in their moving automobile when a third-party inten-

---

[1] The remaining four categories are: (1) discharges which occur while loading or unloading the vehicle (generally courts extend coverage in liability policies to cover the loading and unloading process); (2) the use of a vehicle as a "gun rest" (the courts of the various jurisdictions are divided concerning coverage); (3) accidents involving mounted gun racks in vehicles (generally courts extend coverage in liability policies to cover accidental discharges occurring when the gun is being removed or replaced on the gun rack); and (4) discharges caused by movement of the vehicle, usually when the vehicle hits a bump in the road (courts have had little trouble finding the requisite causal connection in these cases).

tionally fired a gun at them because "the (injuries bear) no apparent relation to the operation of the vehicle or the use to which it was being put. Instead, it resulted from a deliberate assault which took place in the vehicle simply because that is where the (victims) happened to be when the assailant came 'gunning' for (them)." Id. at 830).

Our holding that there is no causal connection between the accidental shooting in this case and the use of the vehicle in which the shooting occurred is also consistent with decisions involving similar circumstances from other states. See, e.g., *Velthouse*, supra (in which no coverage was found when the insured, while "horsing around" with friends, picked up a loaded shotgun in his vehicle and pointed it at one of his friends and the gun accidentally discharged injuring the insured's friend); *National Family Ins. Co. v. Boyer*, 269 NW2d 10 (Minn. 1978) (in which no coverage was found when, after leaving a bar, passenger sitting in a parked car accidentally discharged gun wounding entering passengers); *American Liberty Ins. Co. v. Soules*, 258 S2d 872 (Ala. 1972) (in which no coverage was found when insured accidentally injured passenger when gun discharged while he was moving it); *Brenner v. Aetna Ins. Co.*, 445 P2d 474 (Ariz. App. 1968) (in which no coverage was found when, while returning from a hunting trip, a passenger in the front seat was playing with a gun and pointed it at a passenger in the rear seat and injured him when the gun accidentally discharged); and *Mason v. Celina Mutual Ins. Co.*, 423 P2d 24 (Colo. 1967) (in which no coverage was found when, after target practice, a passenger in the insured vehicle was injured while playing with the gun inside the vehicle).

In support of his position that he, and not Colonial, is entitled to summary judgment, Lumpkin relies heavily upon our decision in *Payne v. Southern Guaranty Ins. Co.*, 159 Ga. App. 67 (282 SE2d 711) (1981). In *Payne*, the insured and his companion went deer hunting in the insured's truck. The insured spotted a deer, got out of the truck to shoot the deer and when he replaced the rifle in the truck, the gun discharged, striking his companion. Id. at 67. *Payne* falls into the category of accidental discharge cases involving loading and unloading the vehicle. The vehicle was being used for deer hunting at the time of the accident and the discharge was causally connected with that use. Thus, in *Payne*, unlike the case at hand, the basis for coverage was more than the mere presence of the parties in the vehicle.

Lumpkin also argues that because the insured vehicle was being used to transport passengers and a gun, a natural and reasonable risk arose that injuries would result from an accidental discharge of the gun within the confines of the car. Even if we interpreted the term "use" in the policy to include use as a moving receptacle for a firearm,

there would still be no causal connection between that use and Lumpkin's injuries under the facts of this case. Lumpkin's injury resulted solely from Hiers' negligent use of the gun, not from the use of the vehicle as a receptacle for the gun. Cf. *Southeastern Fidelity Ins. Co. v. Stevens*, 142 Ga. App. 562 (236 SE2d 550) (1977).

Because Lumpkin's injuries did not arise out of the operation, maintenance or use of the insured vehicle, the trial court erred in denying Colonial's motion for summary judgment. The trial court, however, properly denied Lumpkin's motion for summary judgment.

*Judgment reversed in Case No. A92A1824. Judgment affirmed in Case No. A92A1825. Johnson, J., concurs. Carley, P. J., concurs in judgment only.*

## On Motion for Reconsideration.

On motion for reconsideration, Lumpkin urges us to hold that the facts of this case fall into the category of cases in which the discharge occurs during loading and unloading of the vehicle. In support of this argument, Lumpkin relies upon a fact that is disputed in this case, Hiers' reason for handling the pistol at the time it accidentally discharged injuring Lumpkin. Hiers and Meadows, another occupant of the vehicle, testified during their depositions that Hiers was attempting to hand the gun to Lumpkin at the time the gun discharged. Lumpkin testified that Hiers was attempting to exit the back seat and when he pushed the seat forward the gun discharged injuring him. During Hiers' deposition he testified that on the night of the shooting, he and the two other occupants of the vehicle who were not injured decided to tell the people at the hospital that they saw a rabbit and when they attempted to get out of the vehicle to shoot the rabbit the gun went off.

We hold the trial court erred by denying Colonial's motion for summary judgment regardless of whether Hiers was attempting to exit the vehicle at the time the gun discharged. As we noted in our original opinion in this case, generally courts extend coverage for injuries occurring when the discharge occurs during the loading and unloading process. However, courts have applied a common sense analysis to determine whether coverage is appropriate under the circumstances. When the vehicle is being used for a legitimate purpose (generally hunting) and the accident arises from loading or unloading weapons from the vehicle, most courts have held the accident was covered under the automobile liability insurance policy. See, e.g., *Laviana v. Shelby Mut. Ins. Co.*, 224 FSupp. 563 (D. Vt. 1963) (while on a hunting trip, occupants of vehicle thought they spotted a deer and as passenger attempted to unload his gun before reentering the vehicle, the gun accidentally discharged striking the driver); *Allstate*

*Ins. Co. v. Valdez,* 190 FSupp. 893 (E. D. Mich. 1961) (while a hunter attempted to unload his gun before placing it in the vehicle, he slipped and the gun discharged killing another hunter seated inside the vehicle); *Toler v. Country Mut. Ins. Co.,* 462 NE2d 909 (Ill. App. 1984) (while hunter attempted to unload ammunition from his gun while outside the vehicle, the gun discharged injuring his companion); *Travelers Ins. Co. v. Aetna Cas. &c. Co.,* 491 SW2d 363 (Tenn. 1973) (one hunter injured his hunting companion when he attempted to place a shotgun in the backseat of the vehicle used for hunting). These cases do not offer support for Lumpkin's position. In this case, all the occupants of the vehicle testified that their purpose for using the vehicle on the night in question was not for hunting, but for "riding around." The driver did not stop the vehicle for the purpose of allowing one of the passengers to hunt a rabbit, but only so that he could urinate.

We find persuasive the reasoning of *Tolleson v. State Farm Fire &c. Co.,* 449 S2d 105 (La. App. 1st Cir. 1984). In that case, three young men were loading guns into a vehicle for a hunting trip. During the loading process, the topic turned to bank robbery. During that conversation, one man pointed a gun at another and pulled the trigger. The Louisiana Appeals Court applied what it termed a "common sense approach" to deny coverage. Although the men were loading their weapons for the purpose of hunting the court found the accident was caused by horseplay. See also *Bruno v. Hartford Accident &c. Co.,* 337 S2d 241 (La. App. 3d 1976).

When a common sense analysis is applied to the facts of this case, we must hold the trial court erred in denying Colonial's motion for summary judgment. As we discussed above, the vehicle was being used to "ride around," rather than for hunting. The use of the vehicle did not take on the nature of a hunting trip just because Hiers allegedly might have seen a rabbit. If Hiers was attempting to exit the vehicle to shoot a rabbit, he would have been exiting the vehicle for an illegal purpose since OCGA § 27-3-2 prohibits hunting at night any game bird or game animal in this state except for raccoons, opossums, foxes, and bobcats. Whether Hiers was attempting to exit the vehicle or to hand the gun to Lumpkin at the time the pistol accidentally discharged, the accident arose from Hiers' negligent handling of the gun.

Accordingly, we deny Lumpkin's motion for reconsideration.

DECIDED JANUARY 14, 1993 —
RECONSIDERATION DENIED FEBRUARY 18, 1993.

*Simpson & Gray, Joseph B. Gray, Jr., Elizabeth B. Gibbs,* for appellant.

*Morris & Webster, Craig A. Webster*, for appellees.