MID–CENTURY INSURANCE COMPA-
NY OF TEXAS, a division of The
Farmers Insurance Group of Compa-
nies, Petitioner,

v.

Richard LINDSEY, Respondent.

No. 97–0449.

Supreme Court of Texas.

Argued Oct. 20, 1998.

Decided April 8, 1999.

Rehearing Overruled Sept. 9, 1999.

James E. Hughes, E. Lawrence Merriman, Longview, for Petitioner.

David B. Griffith, Robert D. Bennett, Terri Weatherby Griffith, Gilmer, for Respondent.

Justice HECHT delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice OWEN, Justice ABBOTT, Justice HANKINSON, and Justice O'NEILL join.

The question is whether the underinsured motorist provision of a standard Texas personal auto policy covers the insured's bodily injuries resulting from the unintentional discharge of a shotgun on a gun rack in a pickup truck parked nearby. The answer, in this case, depends on whether, within the meaning of the policy, the injuries resulted from "an accident" "aris[ing] out of" the "use" of the truck. The district court granted summary judgment for the plaintiff, respondent in this Court, and the court of appeals affirmed.[1] We affirm.

**1.** 942 S.W.2d 140.

**2.** *Id.*

## I

Richard Metzer and his wife had been fishing with their nine-year-old son when the boy returned to Metzer's pickup parked nearby to retrieve his coveralls. Finding the truck locked, the boy climbed into the bed and attempted to enter the cab through the truck's sliding rear window, which was open a few inches. In so doing, he accidentally touched a loaded shotgun resting in a gun rack mounted over the rear window, causing the gun to discharge. The buckshot struck Richard Lindsey, who was seated in his mother's car parked next to the pickup. Lindsey's wife and mother, also seated in the car, were not struck by the gunshot.

Lindsey and his wife sued Metzer and settled for the $20,000 policy limits on his truck, which were far less than Lindsey's total damages. The Lindseys then claimed the $50,000 limits of the uninsured/underinsured motorists coverage of his mother's policy issued by the Mid–Century Insurance Company of Texas, a division of the Farmers Insurance Group. Mid–Century, who had consented to the Lindseys' settlement with the Metzers, denied the claim on the ground that there had been no physical contact between the two vehicles. The Lindseys then sued Mid–Century for breach of contract, breach of the duty of good faith and fair dealing, breach of warranty, and violations of the Deceptive Trade Practices—Consumer Protection Act and the Insurance Code. The Lindseys and Mid–Century all moved for summary judgment on the contract claim, and the district court granted the Lindseys' motion and severed the order, making it an appealable judgment. The court of appeals affirmed.[2] We granted Mid–Century's application for writ of error.[3]

## II

Mid–Century's policy states:

**3.** 41 Tex. Sup.Ct. J. 609 (Apr. 14, 1998).

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured [or underinsured] motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured [or underinsured] motor vehicle.

The parties' sole dispute concerning the applicability of this provision is over whether Lindsey's injuries were caused by an accident arising out of the use of Metzer's truck. Taking each of Mid–Century's arguments in turn, we consider, first, whether Lindsey's injuries were "caused by an accident", and second, whether Metzer's liability for Lindsey's injuries "[arose] out of the . . . use" of Metzer's truck.

## A

■ Mid–Century's policy does not define "accident", but we have held that an injury is accidental if "from the viewpoint of the insured, [it is] not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury."[4] An injury caused by voluntary and intentional conduct is not an accident just because "the result or injury may have been unexpected, unforeseen and unintended."[5] On the other hand, the mere fact that "an actor intended to engage in the conduct that gave rise to the injury" does not mean

that the injury was not accidental.[6] Rather, both the actor's intent and the reasonably foreseeable effect of his conduct bear on the determination of whether an occurrence is accidental. "[A]n effect that 'cannot be reasonably anticipated from the use of [the means that produced it], an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.' "[7]

Metzer's son intended only to gain entry to the truck. He did not intend to cause the shotgun to discharge or Lindsey to be injured, nor was it reasonably foreseeable that either consequence would result from the boy's trying to enter the pickup through the rear window. Metzer's son was not playing with the gun or acting recklessly. There is no evidence that he even knew it was loaded. His injuring Lindsey was an accident.

■ Mid–Century argues, however, that by "accident" the policy means "auto accident" or "motor vehicle accident", as evidenced by the use of the latter phrases throughout the policy. An auto accident, Mid–Century argues, requires a collision. Assuming that "auto accident" is a more restrictive term in the policy than "accident", and that a fair construction of the policy as a whole requires that the restriction be implied in the uninsured/underinsured motorist provision where it does not appear, we do not agree that the term excludes the occurrence here. In *Farmers Texas County Mutual Insurance Co. v. Griffin* we held that " '[t]he term "auto accident" refers to situations where one or more vehicles are involved with another vehicle, object, or person.' "[8] A drive-by

**4.** *Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 557 (Tex.1976).

**5.** *Argonaut S.W. Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex.1973).

**6.** *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 828 (Tex.1997).

**7.** *Id.* at 827 (quoting *Heyward,* 536 S.W.2d at 555, in turn citing *International Travelers'*

*Ass'n v. Francis,* 119 Tex. 1, 23 S.W.2d 282, 284–285 (1930)) (second alteration in original) (emphasis omitted).

**8.** 955 S.W.2d 81, 83 (Tex.1997) (quoting *State Farm Mut. Ins. Co. v. Peck,* 900 S.W.2d 910, 913 (Tex.App.—Amarillo 1995, no writ)).

shooting, we concluded, was not an auto accident.[9] The opinion we quoted, in the case of *State Farm Mutual Insurance Co. v. Peck*, concluded that a dog bite inflicted while the victim was in a car was not an auto accident.[10] Nothing in the language or holding of either case suggests that an "auto accident" requires a collision or excludes occurrences like the one in this case.

We therefore conclude that Lindsey's injuries were "caused by an accident" within the meaning of Metzer's policy.

### B

■▬▬ For liability to "arise out of" the use of a motor vehicle, a causal connection or relation must exist between the accident or injury and the use of the motor vehicle.[11] The use required is of the vehicle *qua* vehicle, rather than simply as an article of property.[12] Whether a person is using a vehicle as a vehicle depends not only on his conduct but on his intent.[13] Thus, in *LeLeaux v. Hamshire–Fannett Independent School District* we held that if a vehicle is only the locational setting for an injury, the injury does not arise out of

any use of the vehicle.[14] In that case, a high school student jumped up from where she had been sitting in the open rear doorway of an empty school bus and hit her head on the door frame. We explained:

> The bus in this case was not in operation; it was parked, empty, with the motor off. The driver was not aboard; there were no students aboard. The bus was not 'doing or performing a practical work'; it was not being 'put or [brought] into action or service'; it was not being 'employ[ed] or appl[ied] to a given purpose'. The bus was nothing more than the place where Monica happened to injure herself.[15]

We reached a similar conclusion in *National Union Fire Insurance Co. v. Merchants Fast Motor Lines, Inc.*, a case involving claims and circumstances more closely related to the case now before us. The issue there was whether a sufficient connection existed between a truck driver's alleged negligent discharge of a firearm, striking a passenger in a van traveling alongside, and the operation of the truck, to invoke the

**9.** *Id.*

**10.** 900 S.W.2d at 913.

**11.** *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex.1992) (holding that "arises from" in the Tort Claims Act, TEX. CIV. PRAC. & REM.CODE § 101.021(1)(A), "requires a nexus between the injury . . . and the operation or use of a motor-driven vehicle"). *See National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex.1997) (per curiam) (holding that for an accident to "result[ ] from" the use of an auto "a causal relation between the injury and the use of the auto is essential to recovery"); 8 COUCH ON INSURANCE 3D § 119.28, at 119–43 to 119–44 (1997) ("A causal relation or connection must exist between an accident or injury and the ownership, maintenance, or use of a vehicle in order for the accident or injury to come within the meaning of the phrase 'arising out of the ownership, maintenance, or use' of a vehicle."); 6B JOHN A. APPLEMAN, INSURANCE LAW AND PRACTICE (Buckley ed.) § 4317, at 359 (1979).

**12.** *See* 8 COUCH, *supra* note 11, § 119.37, at 119–56 (" 'Use' must be such use as arises out

of the inherent nature of the automobile."); 6B APPLEMAN, *supra* note 11, § 4316, at 356 (" 'Use' as contemplated by an automobile liability policy, means the use of a vehicle as such and does not include a use which is foreign to a vehicle's inherent purpose but to which a vehicle might conceivably be put.").

**13.** *Cf.* 8 COUCH, *supra* note 11, § 119.37, at 119–58 ("The determination, under an insurance policy of whether a person was in such a position in relation to a vehicle as to be injured in its use, involves consideration not only of what the person was doing when injured, but also of his or her purpose and intent."); 6B APPLEMAN, *supra* note 11, § 4317, at 367 ("In determining whether a person was in such a position in relation to automobile as to be injured in its use, consideration must be given, not only to what person was doing when injured, but also to his purpose and intent.").

**14.** *LeLeaux*, 835 S.W.2d at 51–52.

**15.** *Id.* at 51 (alteration in original).

truck insurer's duty to defend the passenger's claim against the truck driver.[16] We concluded that while defendant was clearly using his truck as a truck, plaintiff failed to allege "even a remote causal relationship" between that use and the shooting.[17] We reasoned that "the mere fact that an automobile is the situs of the accident is not enough to establish the necessary nexus between the use and the accident to warrant the conclusion that the accident resulted from such use." [18]

Two well-established treatises on insurance law, *Couch on Insurance* and Appleman's *Insurance Law and Practice*, distill from numerous cases throughout the country the following test for determining whether an injury arises out of the use of a motor vehicle for purposes of auto liability insurance coverage:

> For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury.[19]

Two Texas courts of appeals have used these factors to conclude that a drive-by shooting does not arise out of the use of a vehicle.[20] We agree that the factors, though unavoidably abstract, are helpful in focusing the analysis, although we neither read the treatises as proposing an absolute test, nor do we regard the factors as such. The third factor is especially troublesome because of the difficulty in many circumstances of deciding what role a vehicle, as opposed to other things, played in producing a particular injury, as shown by the cases cited by Couch and Appleman.[21]

---

16. *National Union,* 939 S.W.2d at 141.

17. *Id.* at 142.

18. *Id.; accord State Farm Mut. Auto. Ins. Co. v. Whitehead,* 988 S.W.2d 744 (Tex.1999) (per curiam); *see Le v. Farmers Texas County Mut. Ins. Co.,* 936 S.W.2d 317, 321 (Tex.App.—Houston [1st Dist.] 1996, writ denied) (en banc) (holding that "the 'use' requirement of [uninsured motorist] coverage is not satisfied by a drive-by shooting"); *Collier v. Employers Nat'l Ins. Co.,* 861 S.W.2d 286, 289–290 (Tex. App.—Houston [14th Dist.] 1993, writ denied) (holding that a drive-by shooting does not involve the use of a motor vehicle "simply because an automobile provided the site for a criminal assault or provided transportation to the location of a criminal act").

19. 8 COUCH, *supra* note 11, § 119.37, at 119–56; *accord,* 6B APPLEMAN, *supra* note 11, § 4317, at 367–369.

20. *Le,* 936 S.W.2d at 321; *Collier,* 861 S.W.2d at 289.

21. *See, e.g., Government Employees Ins. Co. v. Batchelder,* 421 So.2d 59, 61 (Fla.Dist.Ct.App. 1982) (stating that "the third prong requires a causal connection or relation between the use of the vehicle and the accident" and holding that heat inside the truck parked at length in the sun, together with the movement of the truck, contributed to the explosion of a beer bottle, injuring a passenger's eye); *Huntington Cab Co. v. American Fid. & Cas. Co.,* 63 F.Supp. 939 (S.D.W.Va.1945) (holding that a taxicab passenger's injuries received in an assault by the taxi driver did not arise out of the use of the cab), *rev'd,* 155 F.2d 117 (4th Cir.1946) (holding that the phrase "by reason of the ownership, maintenance or use of the cab" did not require that the automobile itself produce the injury, so that a taxi driver's assault on a passenger would be covered by the policy); *Thornton v. Allstate Ins. Co.,* 425 Mich. 643, 391 N.W.2d 320, 327 (1986) (holding that gunshot wounds received by a taxi driver in an armed robbery had no more than a " 'but for', incidental, and fortuitous" causal relation with the driver's use of the vehicle as a vehicle because the vehicle was not the instrumentality of the injuries, but merely the situs); *Keller v. Citizens Ins. Co. of America,* 199 Mich.App. 714, 502 N.W.2d 329, 330 (1992) (holding that plaintiff's mental distress injury over her son's death in an automobile accident did not arise out of the use of a motor vehicle as a motor vehicle and was wholly independent of the cause of that death, reasoning that the automobile did not itself produce the injury, but merely contributed to cause the condition which produced the injury); *Taylor v. Phoenix Ins. Co.,* 622 So.2d 506, 510 (Fla.Dist.Ct.App.1993) (holding that injuries received when struck by a stray bullet during a drive-by shooting were unrelated to the vehicle's use, but noting that coverage

**158** ◼ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

The third factor does not create this difficulty, however, but simply exposes it in the arising-out-of-use test for coverage. The degree of the vehicle's involvement in the production of the injury is a difficult factor to judge, as the cases cited illustrate.

Fundamentally, of course, the issue is what coverage is intended to be provided by insurers and acquired and shared by premium-payers. A drive-by shooting involves a vehicle only incidentally. The shooter could be standing still and accomplish the same result. In such a situation, even if the first two factors of the Appleman/Couch test were satisfied, the third could not be because the vehicle's role in the occurrence is minimal as compared with the shooter's. The vehicle is the mere situs of an incident that could have occurred anywhere.[22] The shooting has nothing to do with the use of the vehicle as a vehicle.

◼ Applying all these considerations to the facts of the case before us, we conclude that Lindsey's injury arose out of the use of the Metzer truck as a matter of law. Metzer's son's sole purpose was to gain entry into the truck to retrieve his clothing. His conduct did not stray from that purpose. He did not play with the gun, or try to shoot it, or load or unload it, or purposefully handle it in any way. His contact with the gun was entirely inadvertent. Although the boy was attempting an unorthodox method of entry, it was not an unexpected or unnatural use of the vehicle, given his size, the fact that the vehicle was locked, and the nature of boys. It was the boy's efforts to enter the vehicle that directly caused the gun to discharge and Lindsey to become injured. Surely if the movement of the truck had caused the shotgun to discharge, there would be little question that the vehicle produced the in-

might exist "if there were evidence that the shooter missed his target and struck [the victim] due to some involvement of the motor vehicle, such as where the speed, trajectory or movement of the vehicle caused the bullet to go awry"); *Wakefield Leasing Corp. v. Transamerica Ins. Co.*, 213 Mich.App. 123, 539 N.W.2d 542 (1995) (holding that intentional gunshot injury allegedly caused by defendant's failure to provide a protective partition in a taxicab primarily driven in areas of high crime did not invoke coverage because the automobile was not the instrumentality of the injury); *Century Mut. Ins. Co. v. League Gen. Ins. Co.*, 213 Mich.App. 114, 541 N.W.2d 272 (1995) (holding that a dog-bite injury received when the victim leaned into the vehicle did not arise out of the use of the vehicle, because the involvement of the vehicle was at most merely incidental and fortuitous); *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wash.App. 541, 543 P.2d 645, 647 (1975) (holding that injuries sustained while attempting to unload a gun in a moving vehicle did not arise out of the use of a vehicle, stating that "before an injury arises out of the use of a vehicle, the vehicle must contribute in some fashion toward producing the injury; the vehicle must be more than the coincidental place in which the injury occurred"); *Holm v. Mutual Serv. Cas. Ins. Co.*, 261 N.W.2d 598 (Minn.1977) (holding that a police officer's tortious battery did not arise out of the use of his police vehicle because it was not causally related to the vehicle's employment for trans-

portation purposes, and because the vehicle itself was not an active accessory to the injury sustained); *Oakridge Community Ambulance Serv., Inc. v. United States Fidelity & Guar. Co.*, 278 Or. 21, 563 P.2d 164 (Ore.1977) (holding that plaintiff's injury was causally connected to the maintenance or use of a vehicle where the evidence showed that an ambulance failed to respond within a reasonable time because it broke down or was involved in an accident); *Nationwide Mut. Ins. Co. v. Knight*, 34 N.C.App. 96, 237 S.E.2d 341 (1977) (holding that gunshot injury received from a drive-by shooting did not arise out of the use of a vehicle); *Garrison v. State Farm Mut. Auto. Ins. Co.*, 258 Kan. 547, 907 P.2d 891, 895 (1995) (holding that there is no requirement that the vehicle physically contribute to the discharge of a gun while it is being removed from the vehicle while hunting because "the minimal causal connection [needed] between the use of the vehicle and the injury is provided by the foreseeable and reasonable use of the vehicle for hunting").

22. *See also Lexie v. State Farm Mut. Auto. Ins. Co.*, 251 Va. 390, 469 S.E.2d 61 (1996) (holding that injuries from shots fired from a moving vehicle do not arise from the use of a vehicle as a vehicle); *Coleman v. Sanford*, 521 So.2d 876, 877 (Miss.1988) (holding that a drive-by shooting was "a voluntary, deliberate act which rendered use of the vehicle incidental").

jury. In such an accident, the vehicle would have more of a role than the Metzer truck had in the accident in this case, but not, we think, significantly more. Application of the third Appleman/Couch factor makes this a close case, but we think on balance the Metzer truck "produced"—to use the factor's word—the injury. Certainly, the truck was not merely the situs of activity, unrelated to any use of the truck that resulted in the accident.

■ We believe this conclusion to be consistent with the majority of decisions in other jurisdictions in similar cases. In each case the court has attempted to assess the peculiar facts and circumstances that gave rise to the injury.[23] Generally, "[i]f the discharge or incident could have occurred regardless of the vehicle, the courts seem to be consistent in holding there is no coverage." [24] Thus, if injury occurs when one is purposefully handling a gun in or around a vehicle, not for the purpose of placing the gun in or removing it from the vehicle, but such as playing with it or intentionally shooting it, there is no causal connection between the injury and the use of the vehicle; the vehicle is merely the situs of the injury and its use incidental to the injury-producing act.[25]

**23.** 8 COUCH, *supra* note 11, § 119:64, at 119–98 ("[E]ach court considers the specific nexus between the discharge of the gun and the involvement of the vehicle under the full package of facts present in the case."); *Sanchez v. Herrera*, 109 N.M. 155, 783 P.2d 465, 467 (1989) ("[T]he proper inquiry ... is whether the use made of the vehicle at the time of the accident logically flows from and is consistent with the foreseeable uses of that vehicle.").

**24.** 8 COUCH, *supra* note 11, § 119:64, at 119–98.

**25.** *See, e.g., Farm Bureau Mut. Ins. Co. v. Crum & Forster Ins. Co.*, 618 F.2d 39 (8th Cir.1980) (applying Minnesota law) (holding that a hunter who was accidentally shot by another hunter while both were riding in the box of a pickup truck did not sustain injuries which arose out of the use of a vehicle); *Criterion Ins. Co. v. Velthouse*, 751 P.2d 1 (Alaska 1986) (holding that injuries sustained while horsing around in a parked truck with a loaded shotgun had no connection with the use of the vehicle and could have occurred in the field or home); *Hartford Fire Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 264 Ark. 743, 574 S.W.2d 265 (1978) (holding that accidental death when teenager playfully pointed loaded pistol at decedent from inside parked camper was not causally related to the use of the vehicle as the accident could have occurred in the field, driveway or hunting lodge); *National Family Ins. Co. v. Boyer*, 269 N.W.2d 10 (Minn.1978) (holding that no relationship existed between use of automobile for transportation purposes and passenger's gunshot injuries sustained as he entered the vehicle when gun had been intentionally fired into air by insured before accidentally shooting the passenger); *American Liberty Ins. Co. v. Soules*, 288 Ala. 163, 258 So.2d 872 (1972)

(holding that there was no causal relationship between the use of an automobile and the shooting that occurred in parked car when occupant moved his pistol from behind himself to a more comfortable location); *Norgaard v. Nodak Mut. Ins. Co.*, 201 N.W.2d 871 (N.D.1972) (holding that shooting death caused by hunter using roof of automobile as a gun rest did not involve a use arising out of the inherent nature of the automobile); *Azar v. Employers Cas. Co.*, 178 Colo. 58, 495 P.2d 554 (1972) (holding that gunshot occurring when hunter retracted shotgun into the car after preparing to shoot rabbits through the car window did not arise out of the use of the vehicle as such); *Mason v. Celina Mut. Ins. Co.*, 161 Colo. 442, 423 P.2d 24 (1967) (holding that gunshot injury did not arise out of the use of a vehicle when youth toying with gun in a parked car accidentally shot his friend); *National Union Fire Ins. Co. v. Bruecks*, 179 Neb. 642, 139 N.W.2d 821 (1966) (holding that gunshot accident that occurred while unloading a gun in a moving vehicle after a hunting trip did not arise out of the use of the vehicle); *Colonial Ins. Co. v. Lumpkin*, 207 Ga.App. 376, 428 S.E.2d 351 (1993) (holding that gunshot injury did not arise out of the use of the vehicle when gun discharged while insured was negligently handling his pistol in a parked car); *Mueller v. Auto Club Ins. Assoc.*, 203 Mich.App. 86, 512 N.W.2d 46 (1993) (holding that passenger in parked car who was struck by nearby hunter's gunshot that missed its target did not incur injuries arising out of the use of the vehicle); *Brown v. Shelter Mut. Ins. Co.*, 838 S.W.2d 148 (Mo.Ct.App. 1992) (holding that accidental gunshot while showing gun to passenger in parked truck did not arise out of use of the vehicle); *State Farm Fire & Cas. Co. v. Strope*, 481 N.W.2d 853 (Minn.Ct.App.1992) (holding that gunshot injury received while attempting to free dog

entangled in the gun casing on truck's floor did not arise out of use of the truck); *Farmers Ins. Group v. Chapman*, 416 N.W.2d 857 (Minn.Ct.App.1987) (holding accidental shooting as hunters removed bullets from their rifles in preparation for transporting them in a vehicle did not arise out of use of the vehicle); *Jordan by Jordan v. Lee*, 76 Or.App. 472, 709 P.2d 752 (1985) (holding that gunshot injury sustained when child handled loaded gun in a trailer did not arise out of trailer's use); *Topole v. Eidson*, 464 So.2d 406 (La.Ct.App.1985) (holding that gunshot injury received when boy was playing with a pistol in the back of a pickup while parents loaded camping gear did not arise out of use of vehicle, because although all involved were using the vehicle by standing in, loading, or entering, the accident was not caused by that use); *Tolleson v. State Farm Fire & Cas. Co.*, 449 So.2d 105 (La.Ct.App.1984) (holding that playfully pointing gun at friend and pulling trigger to simulate a bank robbery did not cause an injury that arose out of the use of the vehicle even though they had been loading car to go hunting); *State Farm Mut. Auto. Ins. Co. v. Smith*, 107 Idaho 674, 691 P.2d 1289 (1984) (finding an insufficient causal relation between the use of motor home and a fatal gunshot wound which occurred when a minor dragged a loaded shotgun across a camper bed of a motor home); *Union Ins. Co. v. Connelly*, 694 P.2d 354 (Colo.Ct.App.1984) (holding that injuries received when unloading a rifle inside a Jeep did not arise out of the use of the vehicle); *Fire & Cas. Ins. Co. v. Illinois Farmers Ins.* Co., 352 N.W.2d 798 (Minn.Ct.App.1984) (holding that shooting of hunting partner while trying to chamber a shell with gun partially in its case and barrel half in the car did not arise out of the use of the vehicle); *Tobin v. Williams*, 396 So.2d 562 (La.Ct.App.1981) (concluding that plaintiff's injuries received when insured disembarked his pickup truck as he aggressively pulled out and pointed a loaded pistol at plaintiff did not arise out of the truck's use); *Cameron Mut. Ins. Co. v. Ward*, 599 S.W.2d 13 (Mo.Ct.App.1980) (holding that no causal connection that was more than speculation, conjecture, or surmise existed between shutting the door of a pickup truck and a rifle's discharge); *Stonewall Ins. Co. v. Wolfe*, 372 So.2d 1147 (Fla.Dist.Ct.App.1979) (holding that no causal connection existed between use of a vehicle and a gunshot injury sustained while seated on the trunk of an automobile when a gun carried by another discharged as he was walking toward the vehicle); *Shinabarger v. Citizens Mut. Ins. Co.*, 90 Mich.App. 307, 282 N.W.2d 301 (1979) (holding that the record did not establish a causal connection between use of the vehicle and death of driver who was shot as he handed shotgun to pas-

senger after shooting at a deer); *Hutchins v. Mills*, 363 So.2d 818 (Fla.Dist.Ct.App.1978) (holding that shooting and killing another hunter by insured, who was hunting standing in the bed of his pick-up truck for better visibility, did not arise out of the use of the vehicle); *Bruno v. Hartford Accident & Indem. Co.*, 337 So.2d 241 (La.Ct.App.1976) (finding that fatal gunshot wound did not arise out of the use of the vehicle when the firearm discharged during a game which began while unloading car after a hunting trip); *State Farm Mut. Auto. Ins. Co. v. Centennial Ins. Co.*, 14 Wash.App. 541, 543 P.2d 645 (1975) (holding that the injury sustained while unloading a rifle in a moving vehicle during a hunting trip did not arise out of the use of the vehicle); *Raines v. St. Paul Fire & Marine Ins. Co.*, 9 N.C.App. 27, 175 S.E.2d 299 (1970) (holding no causal connection between the use of a vehicle and injuries sustained playing with a gun in a parked car); *Brenner v. Aetna Ins. Co.*, 8 Ariz.App. 272, 445 P.2d 474 (1968) (holding that no causal relation existed between use of a vehicle and gunshot injury that occurred when a passenger was toying with and handling a gun because the accident could have occurred in the woods, hunting lodge, or house). *Accord Warrilow v. Norrell*, 791 S.W.2d 515 (Tex.App.—Corpus Christi 1989, writ denied) (holding that a gunshot accident that occurred when insured dropped his loaded pistol in an attempt to remove it from his belt and place it in the vehicle so that he could help his hunting buddy change the vehicle's tire did not arise out of the use of the vehicle within the hunting policy's exclusion provision because he could have easily set the pistol down anyplace). *But see Fidelity & Cas. Co. v. Lott*, 273 F.2d 500 (5th Cir.1960) (applying Texas law) (holding that passenger's gunshot injuries arose out of the use of the vehicle when vehicle was used as a gun rest to fire rifle and shot did not clear roof but deflected down into vehicle); *Thompson v. State Farm Mut. Auto. Ins. Co.*, 161 Wis.2d 450, 468 N.W.2d 432 (1991) (holding that the accidental shooting of a passing motorist by a disabled deer hunter, who was hunting from the bed of his pickup truck and who possessed a permit authorizing him to shoot or hunt from a stationary vehicle, arose out of the use of the truck); *Sanchez v. Herrera*, 109 N.M. 155, 783 P.2d 465 (1989) (holding a causal connection existed between use of pickup truck and a shotgun injury when hunters emptied their guns inside truck during the return trip to avoid possible fines); *Kemp v. Feltz*, 174 Wis.2d 406, 497 N.W.2d 751 (1993) (holding that gunshot injuries received by a hunter when two hunters shot at a deer from the back of a moving truck arose out of use of a vehicle as a mobile hunting vehicle); *Quarles v. State Farm Mut. Auto.*

But when the injury-producing act and its purposes are an integral part of the use of the vehicle as such, injury caused by discharging the gun has generally been held to arise out of use of the vehicle.[26]

Ins. Co., 533 So.2d 809 (Fla.Dist.Ct.App.1988) (holding that fatal gunshot injury received when owner was emptying shotgun while mounted in a gun rack arose out of use of the pickup truck); *Nationwide Ins. Co. v. Auto–Owners Mut. Ins. Co.*, 37 Ohio App.3d 199, 525 N.E.2d 508 (1987) (holding that ejecting shotgun shells into the bed of the truck prior to loading the shotgun into the truck after hunting was a proper, foreseeable use of the truck); *Toler v. Country Mut. Ins. Co.*, 123 Ill.App.3d 386, 78 Ill.Dec. 790, 462 N.E.2d 909 (1984) (holding a causal connection existed between use of the truck and the injury to plaintiff, who was injured when a rifle accidentally fired and shattered the windshield as insured attempted to empty gun chamber before loading rifle into his truck); *Dorsey v. Fidelity Union Cas. Co.*, 52 S.W.2d 775, 777 (Tex.Civ.App.—Waco 1932, writ dism'd by agr.) (holding that gunshot injury to driver that occurred when companion unloaded shells from gun in preparation to load car after hunting, was a danger necessarily incident to the use of the car for the purpose of transporting hunters and was the result of "operating or riding in the car").

**26.** See, e.g., *Garrison v. State Farm Mut. Auto. Ins. Co.*, 258 Kan. 547, 907 P.2d 891 (1995) (holding that the injury sustained by a driver, when a shotgun inside the car accidentally discharged as it was being removed from the car, was a natural and reasonable incident arising out of the use of the car for hunting); *State Farm Mut. Auto. Ins. Co. v. Rice*, 239 Va. 646, 391 S.E.2d 71 (1990) (holding that injuries received from the accidental discharge of a rifle as it was being removed from the front seat of a Jeep to go hunting, arose out of use of vehicle because the vehicle was being used to transport the hunters and their equipment to the hunting site and because the driver had not completed his use of the Jeep when the rifle discharged); *Union Mut. Fire Ins. Co. v. Commercial Union Ins.* Co., 521 A.2d 308 (Me.1987) (finding a causal connection present where the vehicle was being used to transport two men and their firearms for hunting and the gun discharged as it was being removed from the insured's vehicle); *Kohl v. Union Ins. Co.*, 731 P.2d 134 (Colo.1986) (holding that a gunshot injury, that occurred when hunter lifted rifle out of Jeep's gun rack to empty and safely store for the journey home, arose out of the use of the vehicle); *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 350 S.E.2d 66 (1986) (finding a causal connection between the use of a vehicle and gunshot injuries that occurred as the insured removed his rifle from the storage area behind the seat of a pickup truck where it was customarily transported); *Transamerica Ins. Group v. United Pacific Ins. Co.*, 92 Wash.2d 21, 593 P.2d 156 (1979) (holding that a causal relationship existed between a gunshot injury and the use of a vehicle where a gun discharged as passenger removed his rifle's muzzle from the truck's gun rack and the trigger brushed against the rear bracket of the gun rack), *overruled on other grounds*, *State v. Olson*, 126 Wash.2d 315, 893 P.2d 629 (1995); *Allstate Ins. Co. v. Truck Ins. Exch.*, 63 Wis.2d 148, 216 N.W.2d 205 (1974) (holding that the driver's fatal gunshot wound, that occurred when his hunting companion removed his uncased, loaded rifle from the floor of the truck, arose out of the use of the vehicle because loading and unloading of hunting equipment was a normal incident to use of a vehicle for hunting), *overruled on other grounds, Lawver v. Boling*, 71 Wis.2d 408, 238 N.W.2d 514 (1976); *State Farm Mut. Auto. Ins. Co. v. Partridge*, 10 Cal.3d 94, 109 Cal.Rptr. 811, 514 P.2d 123 (1973) (holding that a causal relationship existed between the use of the vehicle and a gunshot accident where the gun discharged in a vehicle when the vehicle hit a bump while driving off-road hunting rabbits); *Travelers Ins. Co. v. Aetna Cas. & Surety Co.*, 491 S.W.2d 363 (Tenn.1973) (holding the requisite causal connection existed between the use of the vehicle and injuries sustained when a shotgun discharged as it was being placed inside insured's vehicle, which was being used to transport the men and their weapons on a hunting trip); *Hartford Fire Ins. Co. v. Pierce*, 127 N.C.App. 123, 489 S.E.2d 179 (1997) (finding a causal connection between use of the vehicle and gunshot injuries sustained as a handgun that was routinely stored and transported in the glove box of the vehicle was being removed from a holster); *Atlanta Cas. Co. v. Orr*, 141 Or.App. 441, 918 P.2d 457 (1996) (holding that the fatal gunshot received when a passenger moved guns in the vehicle to make room to enter and sit down in the vehicle arose out of the use of the vehicle); *Nationwide Mut. Ins. Co. v. Wright*, 70 Ohio App.3d 431, 591 N.E.2d 362 (1990) (holding that gunshot injury which occurred as hunter was exiting the vehicle to return a borrowed shotgun, arose out of the use of the vehicle); *Perryman v. Citizens Ins. Co. of America*, 156 Mich.App. 359, 401 N.W.2d 367 (1986) (holding that gunshot injury arose out of the use of the vehicle when passenger removed his gun from the vehicle while unloading hunting and

Several years ago, the Missouri Court of Appeals in *Cameron Mutual Insurance Co. v. Ward* attempted to categorize auto liability insurance coverage cases involving accidental firearm discharge based on the circumstances of the accident.[27] The court grouped the cases in five categories as follows. If injury occurs:

- while the occupant of a vehicle is handling or toying with the gun, courts consistently deny coverage holding that the vehicle is the mere situs for the accident and no causal connection exists between the discharge of the gun and the inherent use of the vehicle.

- while a person is loading the gun into or unloading the gun from the vehicle, courts generally find coverage.

- while using part of a vehicle as a "gun rest" for the purpose of firing a weapon, courts split, with the majority of cases denying coverage because a "gun rest" is not an inherent use of a vehicle.

- while the gun is resting in or being removed from gun racks permanently attached to vehicles, a majority of cases allow coverage for resulting injuries on the rationale that the presence of the permanently attached gun rack in the vehicle establishes a significant causal connection between the accident and the use of the vehicle.

- when the discharge occurs inside a vehicle caused by the actual movement or operation of the vehicle, courts afford coverage.[28]

*Ward* has been cited in a number of jurisdictions.[29]

In the "gun rack" category are five cases, four of which afford coverage. In *Kohl v. Union Insurance Co.*,[30] the insured was lifting his rifle out of his Jeep's gun rack to unload and store it for the journey home from a hunting trip when the gun suddenly discharged, injuring two of his companions and killing a third. The court concluded that the accident was intimately

---

camping equipment); *Reliance Ins. Co. v. Walker*, 33 N.C.App. 15, 234 S.E.2d 206 (1977) (holding that injuries received when a gun discharged in its mounted gun rack as the driver started the engine arose out of the use of the vehicle); *Glens Falls Ins. Co. v. Rich*, 49 Cal.App.3d 390, 122 Cal. Rptr. 696 (1975) (noting that accident would arise out of the use of the vehicle for purposes of an automobile policy when insured reached under the seat for shotgun as he opened the door in an attempt to exit and shoot squirrel); *Cagle v. Playland Amusement, Inc.*, 202 So.2d 396 (La.Ct.App.1967) (holding that insured's gunshot injuries arose out of the use of his vehicle when security guard attempted to break car window by striking it with his revolver to allow insured access to his locked vehicle). *But see, e.g., Hanson v. Grinnell Mut. Reins. Co.*, 422 N.W.2d 288 (Minn.Ct. App.1988) (holding that no causal relationship existed between gunshot injury and use of vehicle when gun on front seat of vehicle discharged as insured entered the truck to recharge its battery); *Watson v. Watson*, 326 So.2d 48 (Fla.Dist.Ct.App.1976) (holding that fatal gunshot injury, that occurred as pistol was being unloaded from a car at an accident scene so the car could be taken to the repair garage, did not arise out of the use of the vehicle).

**27.** 599 S.W.2d 13, 15–16 (Mo.Ct.App.1980).

**28.** *See id.*

**29.** *See, e.g., Johnson v. State Farm Mut. Auto. Ins. Co.*, 190 W.Va. 526, 438 S.E.2d 869, 875 (1993); *Hamidian v. State Farm Fire & Cas. Co.*, 251 Kan. 254, 833 P.2d 1007, 1011 (1992); *Union Mut. Fire Ins. Co. v. Commercial Union Ins. Co.*, 521 A.2d 308, 311 n. 2 (Me.1987); *Criterion Ins. Co. v. Velthouse*, 751 P.2d 1, 3 (Alaska 1986); *State Farm Mut. Auto. Ins. Co. v. Powell*, 227 Va. 492, 318 S.E.2d 393, 396 (1984); *Garrison v. State Farm Mut. Auto. Ins. Co.*, 20 Kan.App.2d 918, 894 P.2d 226, 230 (1995), *aff'd*, 258 Kan. 547, 907 P.2d 891 (1995); *Colonial Ins. Co. v. Lumpkin*, 207 Ga.App. 376, 428 S.E.2d 351, 352 (Ga.Ct.App.1993); *State Farm Fire & Cas. Co. v. Strope*, 481 N.W.2d 853, 856 (Minn.Ct. App.1992); *Quarles v. State Farm Mut. Auto. Ins. Co.*, 533 So.2d 809, 811 (Fla.Dist.Ct.App. 1988); *State Farm Mut. Auto. Ins. Co. v. Smith*, 107 Idaho 674, 691 P.2d 1289, 1290 (1984); *Toler v. Country Mut. Ins. Co.*, 123 Ill.App.3d 386, 78 Ill.Dec. 790, 462 N.E.2d 909, 914 (1984); *Snouffer v. Williams*, 106 Wis.2d 225, 316 N.W.2d 141, 143 (1982).

**30.** 731 P.2d 134 (Colo.1986).

related to the insured's use of the vehicle as transportation for the hunting trip. In two other cases courts concluded that the permanent attachment of a gun rack to the vehicle created a sufficient causal connection between use of the vehicle and the accidental discharge of a gun in the rack. In one, *Transamerica Insurance Group v. United Pacific Insurance Co.*,[31] the passenger in a truck was removing his rifle's muzzle from the gun rack behind him when the trigger brushed against the rear bracket of the gun rack and the gun discharged, injuring the driver. In the other, *Quarles v. State Farm Mutual Automobile Insurance Co.*,[32] the insured attempted to empty shells from a shotgun mounted in the gun rack of his pickup; the gun discharged, killing his companion. In the fourth case, *Reliance Insurance Co. v. Walker*,[33] a gun mounted in a pickup's gun rack discharged when the insured started his vehicle. The court concluded that the accident was related to the truck's frequent use of transporting rifles for hunting trips.

We are aware of only one case involving a gun rack in which coverage was denied. In *State Farm Mutual Automobile Insurance Co. v. Powell*,[34] the insured drove with a companion to a park, where they met three friends in another vehicle. All five were socializing around the two vehicles, getting in and out and walking around, when a shotgun in the gun rack of the insured's vehicle suddenly discharged, killing one of the three who had come in the other vehicle. No evidence suggested human involvement in the shotgun's discharge. The court rejected the argument that the accident was related to the use of the vehicle simply because the gun rack was permanently attached. Instead, the court focused on what employment of the vehicle was being made and "what the injured person was doing when he was injured, as well as his purpose and intent, in determining whether that person was in such position in relation to the vehicle to be injured in its 'use'."[35] The court concluded that the truck was being used merely as a gathering place for friends and not for any enterprise usually associated with a vehicle.[36] Moreover, since the injured person had not been and did not intend to be a passenger in the insured's vehicle, the court concluded that his connection with the vehicle was too remote for his injury to have arisen from the use of the vehicle.[37]

We agree with the court in *Powell* that a firearm discharge related to a gun rack does not arise out of the use of the vehicle merely because the gun rack is permanently attached. Rather, the purpose and circumstances of the injury-producing act are determinative. The vehicle in *Powell* was being used only as a gathering place and the gun discharged for no apparent reason; it was merely the situs for the accident and injury. By contrast, the injury-producing act in this case—the Metzer boy's entry into the truck to retrieve his clothing—involved the use of the vehicle as a vehicle. Moreover, the boy's entry caused the gun's accidental discharge. We disagree, however, with the *Powell* court's emphasis on the victim's relation to the vehicle as a vehicle. While the victim's involvement with the vehicle is an important factor, it cannot alone determine whether the vehicle's use produced the accident. The more important factors are the actor's conduct and intent.

The dissent argues that no material distinction can be drawn between the circum-

---

31. 92 Wash.2d 21, 593 P.2d 156 (1979), *overruled on other grounds, State v. Olson,* 126 Wash.2d 315, 893 P.2d 629 (1995).

32. 533 So.2d 809 (Fla.Dist.Ct.App.1988).

33. 33 N.C.App. 15, 234 S.E.2d 206 (1977).

34. 227 Va. 492, 318 S.E.2d 393 (1984).

35. *Id.* at 397.

36. *See id* at 398.

37. *See id.*

stances of this case and those of *National Union Fire Insurance Co. v. Merchants Fast Motor Lines, Inc.*, in which we held that allegations that a truck driver " 'negligently discharged a firearm and caused a bullet to strike' . . . a passenger in a van traveling alongside" were not facts within the scope of the vehicle insurance policy coverage, thereby triggering the insurer's duty to defend.[38] The dissent finds "no principled distinction" between the two cases because plaintiffs in both claim negligence.[39] But as we explained in *National Union*, in determining whether an accident is covered by an insurance policy, " 'the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged.' "[40] There, the only connection between the vehicle and the alleged negligent shooting was that the person alleged to have negligently discharged the firearm was driving. Nothing in the victim's pleadings in that case reflected a connection between the truck and the shooting sufficient to invoke the truck insurer's duty to defend against the victim's claim. In the present case, the involvement of Metzer's truck in Lindsey's injury is more significant.

Applying the Appleman/Couch test, and consistent with the results in most similar cases in other jurisdictions, we conclude that Lindsey's accident arose out of the use of Metzer's pickup.

\* \* \* \* \*

Accordingly, we agree with the lower courts that, as a matter of law, Lindsey's injury was covered by Mid–Century's policy on Metzer's pickup. The judgment of the court of appeals is therefore *Affirmed*.

**38.**  939 S.W.2d at 141.

**39.**  *Post* at 165.

**40.**  939 S.W.2d at 141 (quoting the court of appeals opinion).

**1.**  939 S.W.2d 139, 141 (Tex.1997).

**2.**  *See id.* at 140–41.

Justice ENOCH filed a dissenting opinion, in which Justice BAKER and Justice GONZALES join.

Justice ENOCH, joined by Justice BAKER and Justice GONZALES, dissenting.

Before today, our pronouncement in *National Union Fire Insurance Company v. Merchants Fast Motor Lines* was clear. We said that because negligent discharge of a firearm does not produce an injury "caused by . . . use of a covered auto," it *is not* a covered event under an automobile liability policy.[1] The Court's decision today, that, under a similarly worded policy, negligent discharge of a firearm *is* a covered event should come as quite a surprise. Because these two decisions irreconcilably conflict, I respectfully dissent.

The Court must have forgotten that the issue in *National Union* was not the more narrow question of whether there was coverage, but the broader question of whether the insurer owed a duty to defend.[2] This circumstance is significant because in a duty to defend case we resolve any doubt in favor of the insured:

> [I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in insured's favor.[3]

Also, we considered and concluded in *National Union* that under the policy language, "a causal relation between the injury and the use of the auto is essential to recovery."[4] We further considered and concluded that "the mere fact that an auto-

**3.**  *Id.* (quoting *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex.1965), in turn quoting C.T. Drechsler, Annotation, *Allegations in third person's action against insured as determining liability insurer's duty to defend*, 50 A.L.R.2d 458, 504 (1956)).

**4.**  *Id.* at 142.

mobile is the situs of the accident is not enough to establish the necessary nexus between the use and the accident to warrant the conclusion that the accident resulted from such use."[5] We then concluded that the plaintiffs' broad allegations that injuries resulting from the negligent discharge of a firearm in a moving truck, given their most liberal interpretation, did not suggest that the injury resulted from use of the vehicle and did not state a claim within the scope of liability coverage.[6] Consequently, our holding that the insurer had no duty to defend necessarily meant that there was no coverage.

But the Court claims the facts are different here. Let me compare. In *National Union*, the plaintiff asserted that a truck driver, while operating a truck, negligently discharged a firearm.[7] Here, the plaintiff complains that the defendant's child, while entering a truck, negligently discharged a firearm. If there's a difference, it escapes me.

Curiously, the Court seems content to rely on the supposedly important distinction that in this case Metzer's gun was in a gun rack. But negligent discharge of a gun in a gun rack in a truck that's not moving is no more, and arguably less, a "use" of a vehicle than negligent discharge of a gun in a moving truck. Nor is the child's entering the pickup any more a causal nexus between "use" of the vehicle and the injury than a trucker driving his truck down the highway when the injury occurs. Both injuries were incidental to the use of the vehicle. Neither established the necessary causal nexus between the vehicle's use and the accident to implicate coverage under the automobile liability policy.[8]

Further, the Court obfuscates the issue by claiming that this case is different because the gun was not "purposefully" handled.[9] In *National Union*, we decided simply whether a broad pleading alleging only negligent discharge of a firearm in a moving vehicle triggered the duty to defend under the automobile liability policy.[10] And we said no.[11]

Oddly, the Court recognizes as fundamental the question of what the insurer intended to provide and the insured intended to buy,[12] but then ignores the issue. If the Court finds intent of the parties fundamental, it should then explain its implicit conclusion that (1) the agreement between the parties in this case contemplated that the negligent discharge of a firearm would be covered, but that (2) the similarly worded agreement between the parties in *National Union* didn't. Surely the Court does not believe that the contracting parties here had in mind the sort of infinitesimal distinctions the Court is making between this case and *National Union*. I can't split hairs so finely. And I don't think the practicing bar will be able to either.

The Court unnecessarily embarks on an exhaustive search through other states' jurisprudence to glean support for its conclusion that there is coverage here[13] when we have already decided the issue. There is no principled distinction between this case and *National Union*. The court of appeals' judgment should be reversed. Accordingly, I dissent.

---

5.   *Id.*

6.   *See id.* at 141–42.

7.   *See id.* at 141.

8.   *See State Farm Mut. Ins. Co. v. Whitehead,* 988 S.W.2d 744, 745 (Tex.1999) ("[W]hen the injury complained of is purely incidental to the use of the vehicle, this nexus is not shown and the policy does not provide coverage.").

9.   988 S.W.2d at 745.

10.   *See* 939 S.W.2d at 141–42.

11.   *Id.*

12.   *See* 988 S.W.2d at 745.

13.   *See id.* at 745.