NUMBER 13-02-094-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      

COASTAL MART, INC. AND 
COASTAL MARKETS, LTD.,  
D/B/A MAVERICK MARKETS,                                           Appellants,

v.

SOUTHWESTERN BELL
TELEPHONE COMPANY,                                                           Appellee.
                                                                                                                                      

On appeal from the 377th District Court of Victoria County, Texas.
                                                                                                                      

O P I N I O N

Justices Yañez, Castillo and Garza 
Opinion by Justice Garza

This is a contract dispute between Coastal Mart, Inc., Coastal Market, Ltd. d/b/a
Maverick Markets (collectively “Coastal”) and Southwestern Bell Telephone Company
(“SWBT”). Underlying this dispute are wrongful death and survival actions filed against
Coastal and SWBT by Guadalupe Ordonez and Maria Esparza for damages arising from
the death of their daughter, Blanche Esparza. Ordonez and Esparza alleged that their
child was killed due to the negligence of Coastal and SWBT in the design, placement,
operation, and maintenance of SWBT pay phones in front of a convenience store operated
by Coastal.


 Ordonez eventually settled his claim with Coastal and SWBT, and the trial
court ultimately issued a take-nothing judgment against Esparza. Before these actions
were resolved, Coastal filed a cross-action against SWBT based on a license agreement
executed by Coastal and SWBT that dealt with the pay phones involved in Blanche’s
death. The trial court entered a final summary judgment in favor of SWBT on Coastal’s
cross-action, and this appeal ensued. We affirm in part, see Tex. R. App. P. 43.2(a), and
reverse and remand in part. See Tex. R. App. P. 44.1(b).
Issues on Appeal / Standard of Review
According to Coastal’s cross-action, SWBT was obligated to indemnify Coastal for
the claims alleged by the plaintiffs in the underlying actions, and in addition, SWBT was
obligated to provide insurance for and defend Coastal against the plaintiffs’ claims. 
Coastal’s cross-action is thus primarily a claim for breach of contract; however, it also
asserts that SWBT acted in bad faith as an insurance company, which is an extra-contractual claim. See Aranda v. Ins. Co. of N. Am., 748 S.W.2d 210, 212 (Tex. 1988)
(“[The] duty of good faith and fair dealing arises out of the special trust relationship
between the insured and the insurer.”). Coastal moved for summary judgment on both
claims, as did SWBT. 
Coastal raises four issues on appeal. It argues that the trial court erred by awarding
summary judgment to SWBT and not awarding summary judgment to Coastal because,
as a matter of law, the evidence showed that (1) SWBT owed Coastal a duty to indemnify
and hold Coastal harmless, (2) SWBT owed Coastal a duty to maintain insurance and to
defend Coastal, (3) SWBT breached the license agreement, and (4) SWBT acted in bad
faith. Coastal also asserts that it is entitled to reasonable attorney’s fees under the civil
practice and remedies code. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon
1997). Appellate courts review summary judgments de novo. Natividad v. Alexsis, Inc., 875
S.W.2d 695, 699 (Tex. 1994); Tex. Commerce Bank-Rio Grande Valley, N.A. v. Correa,
28 S.W.3d 723, 726 (Tex. App.—Corpus Christi 2000, pet. denied). When both sides
move for summary judgment and the trial court grants one side’s motion without specifying
its reasons, as in this case, the appellate court must review the motions and evidence and
render the judgment that the trial court should have rendered. Comm’rs Court v. Agan, 940
S.W.2d 77, 81 (Tex. 1997). 
I. Duty to Indemnify
We begin with whether SWBT had a duty to indemnify Coastal under the license
agreement. Indemnity agreements are construed under the normal rules of contract
construction. Assoc. Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 284 (Tex.
1998). The interpretation of an unambiguous contract is a question of law for the court to
decide. N. M. Uranium, Inc. v. Moser, 587 S.W.2d 809, 814 (Tex. Civ. App.—Corpus
Christi 1979, writ ref’d n.r.e.); see also Perry v. Houston Indep. Sch. Dist., 902 S.W.2d 544,
547 (Tex. App.—Houston [1st Dist.] 1995, writ dism’d w.o.j.). Unambiguous contracts are
enforced as written. See, e.g., Heritage Res., Inc. v. Nationsbank, 939 S.W.2d 118, 121
(Tex. 1996). When a contract contains an ambiguity, the granting of a motion for summary
judgment is improper because the interpretation of the instrument is a question of fact for
the jury. Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987). Whether a
contract is ambiguous is a question of law. See Nat’l Union Fire Ins. Co. v. CBI Indus.,
Inc., 907 S.W.2d 517, 520 (Tex. 1995) (per curiam); see also Vermillion Constr. Co. v. Fid.
& Deposit Co., 526 S.W.2d 744, 748 (Tex. Civ. App.—Corpus Christi 1975, no writ). If a
written contract is worded so that it can be given a definite or certain legal meaning, then
it is unambiguous. Nat’l Union, 907 S.W.2d at 520; see also Coker v. Coker, 650 S.W.2d
391, 393 (Tex. 1983); Universal CIT Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex.
1951). An ambiguity does not arise simply because the parties offer conflicting
interpretations. Lopez v. Munoz, Hockema & Reed, 22 S.W.3d 857, 861 (Tex. 2000);
Kelley-Coppedge, Inc. v. Highlands, 980 S.W.2d 462, 465 (Tex. 1998). Rather, a contract
is ambiguous only if two or more meanings are genuinely possible after application of the
pertinent rules of interpretation to the face of the instrument. Daniel, 243 S.W.2d at 157. 
Parol evidence is not admissible for the purpose of creating an ambiguity. Highlands, 980
S.W.2d at 464. Only when a contract is first determined to be ambiguous may the court
admit extraneous evidence to determine the true meaning of the instrument. Id. 
The starting point of our inquiry is the operative language of the license
agreement that creates and specifies the scope of SWBT’s duty to indemnify:
SWBT shall indemnify and hold COASTAL . . . free and harmless from
and against any and all claims, liabilities, losses, liens, demands,
damages, and causes of action of every particular character and kind . . .
which COASTAL may at any time suffer, incur, or sustain, arising from or
connected with SWBT’s obligations hereunder . . . . 
 
This language limits SWBT’s duty to indemnify to events “arising from or connected with
SWBT’s obligations” under the license agreement. We must therefore examine SWBT’s
obligations under the license agreement to determine if SWBT’s duty to indemnify has
been triggered. The relevant language is as follows:
 
SWBT [has] the right, obligation and license to install, operate, maintain and
service public telephone(s) and associated equipment . . . . The location of
the Public Telephone Equipment at each premises shall be mutually agreed
upon between COASTAL and SWBT in order to satisfy considerations of
safety and discouragement of undesirable utilization. 

According to this language, SWBT had an obligation to place its telephone equipment in
a location that satisfied “considerations of safety.” 
          The next question is whether the claims against Coastal and SWBT “arise from” or
are “connected with” SWBT’s obligation to “satisfy considerations of safety.” The claims
alleged that Coastal and SWBT were negligent for having “public telephones placed in the
unobstructed path of vehicular traffic.” On their face, these claims “arise from” and are
“connected with” SWBT’s obligation to place its telephone equipment in a location that
satisfied “considerations of safety.”
          SWBT argues that the claims do not “arise from” and are not “connected with”
SWBT’s obligations because (1) its “on-site obligations were strictly limited to installing,
operating, maintaining and servicing the three pay phones”; and (2) “the injury sustained
by Blanche was caused, both factually and legally, solely by the criminal actions of Mr.
Godinez, not by SWBT.” SWBT contends that “phrases such as ‘arise from’ in an
indemnity agreement are to be narrowly construed.” In particular, SWBT argues that
“where an indemnitor’s work or service under a contract is limited in nature and performed
in a safe manner and injury results due to the negligence of the indemnitee or a third party,
the injury does not ‘arise from’ and is not ‘connected with’ the indemnitor’s performance
under the contract.” See Brown & Root, Inc. v. Serv. Painting Co., 437 S.W.2d 630 (Tex.
Civ. App.—Beaumont 1969, writ ref’d). 
          In a separate point, SWBT emphasizes that “it is not the allegations in a case but
the actual facts of the case that matter” in deciding whether a duty to indemnify exists. See
Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 210 (Tex. 1999) (“The facts
that entitle an indemnitee to seek indemnification through suit come into existence when
the indemnitee’s liabilities become fixed and certain by judgment.”); Am. Alliance Ins. Co.
v. Frito-Lay, Inc., 788 S.W.2d 152, 153–54 (Tex. App.—Dallas 1990, writ dism’d). SWBT
points out that Coastal voluntarily settled its claim with Guadalupe Ordonez and argues
that Coastal thereby “destroyed any forum for determining who was at fault.” See Man
GHH Logistics GMBH v. Emscor, Inc., 858 S.W.2d 41, 43–44 (Tex. App.—Houston [14th
Dist.] 1993, no writ). 
          SWBT further argues that “[t]he duty to indemnify attaches only upon a finding of
liability, not by virtue of mere allegations.” See Ingersoll-Rand, 997 S.W.2d at 205 (“We
adhere to the longstanding rule that a claim based on a contract that provides
indemnification from liability does not accrue until the indemnitee’s liability becomes fixed
and certain, as by rendition of a judgment.”). SWBT argues that the take-nothing judgment
against Maria Esparza precluded a contractual duty to indemnify from arising. 
          We take this last point first. Neither SWBT’s motions for summary judgment nor its
response to Coastal’s motion for summary judgment argued that the judgment entered
against Maria Esparza precluded SWBT’s contractual duty to indemnify from arising.


 
Notably, summary judgment was entered against Maria Esparza on August 1, 2001, well
before SWBT filed its response to Coastal’s motion for summary judgment on October 26,
2001 and well before the trial court’s final judgment of November 13, 2001.


 SWBT thus
had ample opportunity to raise this contention but failed to do so. The “No liability = No
Indemnity” argument is being made for the first time on appeal.


 It therefore cannot be
considered as a basis for upholding the trial court’s summary judgment. See City of
Mission v. Ramirez, 865 S.W.2d 579, 581 (Tex. App.—Corpus Christi 1993, no writ)
(“Summary judgments may not be affirmed or reversed on grounds not expressly set forth
in the motions presented to the trial court.”).  
          SWBT also failed to preserve the “No Liability = No Indemnity” argument as to the
action filed by Guadalupe Ordonez. SWBT’s motions and response made no argument
that Coastal’s settlement with Ordonez precluded contractual indemnification, even though
Coastal settled its claim with Ordonez in 2000. Consequently, that argument cannot be
considered as a ground for affirming the summary judgment for SWBT. See id. 
          We now evaluate SWBT’s chief argument against contractual indemnity: the
underlying claims do not “arise from” and are not “connected with” SWBT’s performance
under the contract. As a preliminary matter, we disagree that the contract’s “arising from
or connected with” language requires a determination that SWBT’s actions constitute a
legal or factual cause of the “claims, liabilities, losses, etc.” for which indemnity is sought. 
Instead, the plain meaning of “arising from or connected with” is that Coastal must
establish some nexus between SWBT’s obligations under the contract and the detriment
for which indemnity is sought. The nexus need not necessarily amount to direct or
proximate causation. See Utica Nat’l Ins. Co. v. Am. Indem. Co., 141 S.W.3d 198, 203
(Tex. 2003) (“‘[A]rising out of’ are words of much broader significance than ‘caused by.’”). 
In fact, the Texas Supreme Court has held that “arise out of” simply means that there is “a
casual connection or relation.” See id. “Connected with” connotes an even more general
nexus. 
          We conclude that Coastal established a sufficient nexus between SWBT’s
obligations under the contract and the loss for which it seeks indemnity. SWBT was
obligated to “satisfy considerations of safety.” The wrongful death and survival actions for
which Coastal seeks indemnity dealt directly with whether that obligation had been met
(i.e., whether Coastal and SWBT were negligent for having “public telephones placed in
the unobstructed path of vehicular traffic”). We therefore conclude that the actions “arise
from” and are “connected with” SWBT’s obligations under the contract. In reaching this
conclusion, we note that by its own language, the indemnity provision applies “regardless
of the joint or concurrent negligence of COASTAL.” Therefore, it is of no consequence that
Coastal shared SWBT’s obligation to satisfy considerations of safety. 
          Coastal established as a matter of law that SWBT had a duty to indemnify Coastal. 
Coastal was therefore entitled to summary judgment on this claim. Coastal’s first issue is
sustained. 
II. Duties to Maintain Insurance and to Defend 
          In its second issue, Coastal contends that paragraph 19 of the license agreement
created an obligation on the part of SWBT to maintain insurance for Coastal and to defend
it against the underlying claims.  
          In relevant part, paragraph 19 reads:
SWBT shall maintain or shall require and be responsible for ensuring that its
contractors and agents maintain at all times during the term of this
Agreement insurance satisfactory to COASTAL . . . to protect SWBT and
COASTAL from and against all claims, demands, and causes of action
arising by reason of SWBT’s access to COASTAL’s premises . . . .
 
Such insurance shall be considered primary insurance, and all insurance
carried by COASTAL shall be considered secondary in relation thereto. Any
and all deductibles in the required insurance policies shall be assumed by,
for the account of, and at the sole risk of SWBT. 
 
          Texas courts follow the “Eight Corners” or “Complaint Allegation” rule when
determining whether a duty to provide insurance or a duty to defend exists. See Am.
Alliance, 788 S.W.2d at 153. This rule requires that only the allegations in the petition and
the terms of the insurance policy be considered in determining whether a duty to provide
insurance or a duty to defend exists. Feed Store, Inc. v. Reliance Ins. Co., 774 S.W.2d 73,
74 (Tex. App.—Houston [14th Dist.] 1989, writ denied). In this case, there is a license
agreement, but there is no insurance policy. Consequently, we cannot apply the “Eight
Corners” rule per se. Instead, we use the traditional rules of contract construction;
however, because the duties to provide insurance and defend are triggered by the lawsuit,
and not its ultimate outcome, we must consider the license agreement in light of the
allegations of the petitions filed by Ordonez and Esparza. See id. at 75 (“[W]e have no
business passing on the actual outcome of the . . . litigation.”); see also Am. Alliance, 788
S.W.2d at 154 (“The duty to defend is not affected by facts ascertained before suit,
developed in the process of litigation, or by the ultimate outcome of the suit.”). 
           We agree that the language of paragraph 19 created a duty for SWBT to maintain
insurance, the express purpose of which was to protect SWBT and Coastal from and
against all claims, demands, and causes of action arising by reason of SWBT’s access to
Coastal’s premises. The pivotal issue is whether the claims, demands, and causes of
action underlying this case arose “by reason of SWBT’s access to Coastal’s premises.” 
We hold that they did. The plaintiffs in the underlying case alleged that their child was
killed due to the negligence of Coastal and SWBT in the design, placement, operation, and
maintenance of SWBT’s pay phones. As noted above, SWBT had the “right, obligation
and license to install, operate, maintain and service public telephone(s) and associated
equipment” on Coastal’s premises. In addition, the license agreement provides: “If any
Public Telephone Equipment appears to constitute a hazard . . . , SWBT will be allowed
to make adjustments or modifications in an attempt to alleviate the concern.” To this end,
the license agreement granted “SWBT and its service representatives, agents and
employees reasonable access to the Premises for installing, servicing, repairing and
maintaining the Public Telephone Equipment . . . .” In short, SWBT had a right to access
Coastal’s premises to alleviate safety concerns and maintain the pay phones. This access
was directly implicated by the plaintiffs’ allegations, which complained of the design,
placement, operation, and maintenance of the pay phones on Coastal’s premises. 
Accordingly, we conclude that SWBT was obligated to provide Coastal with insurance.
          In reaching this conclusion, we emphasize that the issue before this Court is not
whether SWBT should be liable to Guadalupe Ordonez or Maria Esparza or whether its
actions caused Blanche’s death as a matter of law. The issue is whether the claims,
demands, and causes of action filed by Ordonez and Esparza arose by reason of SWBT’s
access to Coastal’s premises. Based on the allegations of the plaintiffs’ petitions, we
conclude that they did. 
          Next, we must determine whether SWBT had a duty to defend Coastal against the
underlying lawsuits. See Reser v. State Farm Fire & Cas. Co., 981 S.W.2d 260, 264 (Tex.
App.—San Antonio 1998, no pet.) (“The duty to defend and the duty to indemnify are
separate and distinct duties.”). We conclude that it did not. There is no language in the
license agreement requiring SWBT to defend Coastal. SWBT had a duty to maintain
insurance “to protect . . . Coastal from and against all claims,” but that duty was a duty to
maintain insurance and not a duty to defend. Coastal’s reply brief cites Mid-Century Ins.
Co. v. Lindsey for the proposition that SWBT’s “insurance would necessarily afford Coastal
a defense in the proper circumstances”; however, Lindsey does not support such a
proposition. See Mid-Century Ins. Co. v. Lindsey, 997 S.W.2d 153, 156 (Tex. 1999). The
sole issue in Lindsey was “whether the underinsured motorist provision of a standard
Texas personal auto policy covers the insured’s bodily injuries resulting from the
unintentional discharge of a shotgun on a gun rack in a pickup truck parked nearby.” Id.
at 154. 
          Although the insurance SWBT was obligated to maintain may have provided Coastal
with a defense, nothing in the license agreement contemplated a separate obligation for
SWBT to defend Coastal. Coastal was entitled to a defense only to the extent of SWBT’s
duty to maintain insurance. SWBT was entitled to judgment as a matter of law on the issue
of failure to defend and Coastal was entitled to judgment as a matter of law on the issue
of failure to maintain insurance. Accordingly, we overrule Coastal’s second issue as it
relates to the duty to defend and sustain Coastal’s second issue as it relates to the duty
to maintain insurance. 
 
III. Breach of Contract 
          In its third issue, Coastal argues that SWBT breached the license agreement by
failing to defend, indemnify, and maintain insurance for Coastal. The elements of a breach
of contract claim are (1) the existence of a valid contract, (2) performance or tendered
performance by the plaintiff, (3) breach of the contract by the defendant, and (4) damages
to the plaintiff resulting from the breach. Ford v. City State Bank of Palacios, 44 S.W.3d
121, 137 (Tex. App.—Corpus Christi 2001, no pet.). Coastal’s motion established its
entitlement to summary judgment on its breach of contract claim. Coastal proved the
existence of a valid contract, which it performed and SWBT breached by failing to
indemnify Coastal and to maintain insurance. Coastal also proved that it suffered
damages: it did not receive indemnity and insurance benefits. We therefore hold that
Coastal was entitled to judgment as a matter of law on its claim for breach of contract. 
Coastal’s third issue is sustained. 
IV. Bad Faith
          In its fourth issue, Coastal argues that SWBT acted in bad faith as an insurance
company. SWBT, in contrast, maintains that there is no evidence that it (1) acted as an
insurance company or (2) acted in bad faith. We agree with SWBT. Although we have
concluded that SWBT had a duty to maintain insurance, Coastal provided the trial court
with no basis for imposing a duty of good faith and fair dealing on SWBT. Accordingly,
SWBT was entitled to judgment as a matter of law on Coastal’s bad faith claim. We
overrule Coastal’s fourth issue. 
 
 V. Conclusion 
          The judgment of the trial court is affirmed in part, see Tex. R. App. P. 43.2(a), and
reversed and remanded in part. See Tex. R. App. P. 44.1(b). Specifically, Coastal is
entitled to judgment as a matter of law on its claim for breach of contract and reasonable
attorney’s fees under chapter 38 of the civil practice and remedies code. See Tex. Civ.
Prac. & Rem. Code Ann. § 38.001 (Vernon 1997). Because fact issues remain as to the
amount of damages to which Coastal is entitled on these claims, see Tex. R. Civ. P. 166a
(stating that summary judgment is proper even if fact issues exist as to damages), the case
is remanded to the trial court for further proceedings consistent with this opinion and
necessary to resolve the questions of fact on the issue of damages. See Tex. R. App. P.
44.1(b).  
                                                                               _______________________
DORI CONTRERAS GARZA,
                                                                               Justice
 
Concurring Opinion by
Justice Errlinda Castillo.
 
Opinion delivered and filed 
this the 20th day of January, 2005.